653 So.2d 283 (1995)
Robert Gerald SHELTON
v.
Geraldine A. SHELTON.
No. 93-CA-00127-SCT.
Supreme Court of Mississippi.
March 30, 1995.
*284 B. Brennan Horan, Horan & Horan, Horn Lake, for appellant.
Jack R. Jones, III, Taylor Jones Alexander Sorrell & McFall, Southaven, for appellee.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION AND PROCEDURAL HISTORY
Appellant Robert Shelton ("Robert") and Appellee Geraldine Shelton ("Geraldine") were divorced in September 1987, pursuant to which decree the parties' two minor children were placed in custody of Geraldine with reasonable rights of visitation to Robert. Robert was ordered to pay child support in the amount of $200.00 per child per month. In May 1992 Robert filed a petition to modify the divorce decree, seeking a change of custody of one of the parties' children and a modification of child support. Geraldine answered and counterclaimed for contempt based on Robert's failure to pay child support.
Following a hearing on the matter, the chancellor entered an order finding Robert in contempt of court and ordering him to pay Geraldine $200.00 a month in ongoing child support and $100.00 a month until his arrearage of $7,970.00 was paid, including 8% interest thereon. Robert's requested modification was granted to the extent that he was relieved from further child support payments for the oldest child. Aggrieved, Robert now appeals to this Court, requesting review of the following issues:
A. Whether Appellant was in contempt of court for his failure to pay child support in full;
B. Whether the chancellor should have granted Appellant's request for modification of custody; and
C. Whether Appellant is entitled to pay his arrearage at the rate of $100.00 per month.

II. THE FACTS
Although Geraldine had custody of her and Robert's two children from the time of divorce in September 1987, one child, Aunnie, began to reside with Robert beginning in September 1988. Geraldine phoned Robert one night and asked him to pick up Aunnie because she was interfering with Geraldine's life.[1] Robert picked up Aunnie the next *285 morning, drove her to Ashland, MS, where he resided, and enrolled her in Faulkner Junior High School. At this time, Robert was not employed and was about $1,500-$2000.00 behind in his child support payments, though he denied having voluntarily or contemptuously failed to pay. Despite the arrearage in child support payments, Robert bought Aunnie a new car, on which he paid the notes and insurance.
Robert and Aunnie lived in a metal shed with no heat and only a wood stove for about four months. Robert then convinced Aunnie to live with Geraldine until he could get some money together. In January 1989 Aunnie moved in with Geraldine and stayed there until June 1989, when she once again moved in with Robert for the summer months. In June 1990 Aunnie again moved in with Robert, who had moved to Horn Lake and rented an apartment there. Aunnie thereafter stayed with Robert, attending eleventh and twelfth grades at Horn Lake. In total, Aunnie had lived with Robert for about 37 months from the time the couple divorced until the time of the hearing.
Sometime prior to November 1990 Robert contacted an attorney in Southaven about changing custody of Aunnie from Geraldine to himself. Robert paid $400.00 to have legal papers prepared, but the attorney neglected his case. Robert then asked for his money back, at which time the attorney returned $100.00 and provided a motion to modify as well as a consent order. Although Geraldine had asked Robert to have Aunnie's custody legally changed, when he presented her with these papers she refused to sign them.
Robert had receipts for all of the $6,000.00 or $6,400.00 child support he had paid Geraldine from the time of divorce forward. He had been unable to pay either $400.00 or $200.00 monthly child support while he had Aunnie with him. While Robert claimed he has adequately provided for Aunnie, he also contended that he could not afford to pay child support for her or his other child who still resided with Geraldine. A painter, Robert did not have a job at the time of trial; "whatever I make, I make." Nonetheless, Robert provided the court with a financial statement which reflects his income and expenses from January 1992 to September 1992. This statement shows his gross and net monthly income as $900.00 and monthly expenses totalling $1,550.00. Robert testified that it would be fair if he provided for Aunnie, since she was in his custody, and Geraldine provided for Mandy, the parties' other child, who was in Geraldine's custody. Mandy was 11 years old at the time of the hearing.
Geraldine was awarded the couple's house upon divorce. Geraldine sold the house and Robert felt Aunnie was entitled to some of the $30,000.00 proceeds. Geraldine claimed that she only received about $15,000.00 from the sale of the house after paying Robert his portion. Geraldine put her portion of the proceeds into another house for herself. Geraldine later remarried, in July 1991. Robert helped Geraldine with the medical expenses[2] for the parties' other child, Mandy, although he was not required to do so by court order. Geraldine did not believe Robert should be given credit toward his child support arrearage for the amount he had voluntarily paid toward Mandy's medical expenses. In 1992 Robert traded in Aunnie's car and bought her a new 1992 Celica, on which he paid the notes and insurance, and which Aunnie was still driving at the time of trial.
At the time of the hearing, Robert and Aunnie were living with Robert's mother; he was financially unable to live elsewhere. Robert was giving 18 year old Aunnie an allowance for her to save toward her college tuition. Since Aunnie had graduated from high school in May, she had worked with her mother for two months as a temporary employee, as a hostess at a steak house for a month, and then accompanied her father on his painting jobs.
Aunnie testified that her father adequately provided for her and she wanted to remain with him. Geraldine agreed that Robert had provided for Aunnie and that Aunnie should stay with him. Aunnie characterized the allowance *286 from Robert as payment for helping him on painting jobs and said she earned about $300.00 each week or two.
Geraldine testified that for the first year following her divorce from Robert, he paid the entire amount of child support only one month. In 1991 Geraldine contacted the Legal Department of the Human Services Office regarding Robert's failure to pay child support. Geraldine told Ms. Atkinson, an employee of the Office, that all she wanted was $200.00 a month for the child who resided with her. According to Geraldine, Robert agreed to pay the $200.00 a month beginning May 8 and she agreed not to sue for the arrearage. Shortly thereafter, Robert brought her the papers she had requested, to change custody of Aunnie from Geraldine to Robert, but the papers also provided that all child support for both children would be dropped. Geraldine refused to sign the papers.
An affidavit of accounting was prepared by Ms. Atkinson and Geraldine to show how much Robert had paid and how much his arrearage was. This accounting reflects that Geraldine gave him credit for payment of $200.00 a month from July 1990 through April 1992, although he had not paid this amount. This was done because Geraldine did not want child support for Aunnie while she was living with Robert. Robert's total credit through April 1992 was $10,030.00 and his arrearage was $11,970.00. He had not paid any amount of child support since that time.
Geraldine testified that she only wanted $200.00 a month child support for Mandy and the arrearage owed, which was $13,770.00 at the time of the hearing. Geraldine agreed that if $200.00 a month were subtracted for each month that Aunnie had lived with Robert from July 1990 to the present, the arrearage figure would be reduced.
The chancellor found that Robert had unclean hands, as he was in arrears in the amount of $1,500.00 to $2,000.00 in child support as of June 1989. As a result, the chancellor declined to grant Robert's modification. Robert was found in contempt of court and liable for $13,770.00 in child support arrearage, less $200.00 per month for the period from June 1990 to the date of the hearing since Aunnie had been in his continuous custody for those months. Geraldine was awarded judgment in the amount of $7,970.00 with 8% interest. Based on Robert's financial statement, which the chancellor found revealed some excessive expenses, the chancellor found Robert had the ability to pay. The chancellor further provided that Robert could purge his contempt by paying toward the arrearage $100.00 per month beginning January 1, 1993. Finally, although the chancellor claimed not to be modifying the decree, he reduced Robert's child support payments from $400.00 a month to $200.00 a month beginning January 1, 1993, to cover only the child in Geraldine's care and custody. The parties were ordered to pay their own attorney fees, with Robert responsible for court costs.

III. THE LAW

A. Whether Appellant was in contempt of court for his failure to pay child support in full.

The Parties' Contentions
Robert claims he could not have been found in contempt of court as his non-payment of child support was due to impossibility because of his lack of steady employment. Additionally, Robert contends he should be given credit toward his arrearage for $400.00 per month for each of the months Aunnie lived with him. Geraldine counters that the chancellor was within his discretion in finding Robert in contempt of court as he was indeed behind in his child support payments and could have afforded to pay them.

Relevant Law and Analysis
Whether a party is in contempt of court is left to the chancellor's substantial discretion. Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990). However, clear and convincing proof is required. Id. When a party is unable to pay court ordered support, the proper action for him to take is to promptly file for a modification of support. When this course of action is followed, a finding of contempt is not proper. Cumberland, *287 564 So.2d at 847; Thurman v. Thurman, 559 So.2d 1014, 1016-17 (Miss. 1990). When a party fails to take this course of action, he must "make out a clear case of inability." Duncan v. Duncan, 417 So.2d 908, 908 (Miss. 1982). Where substantial evidence supports the chancellor's finding that payments could have been made, this Court will not reverse. Rainwater v. Rainwater, 236 Miss. 412, 421, 110 So.2d 608, 611 (1959).
Robert did seek a modification of his child support obligations prior to Geraldine's counterclaim for contempt. However, Robert did not follow this course of action promptly. His petition for modification was filed in May 1992. In the first year following the September 1987 divorce decree Robert paid the full amount of child support only one month. Since September 1988, when Aunnie first moved in with him, Robert "adjusted" his support payments without the consent of any court. It follows that the burden was on Robert to make out a clear case of inability to prevent a finding of contempt.
Robert presented his financial statement to the chancellor, who subsequently found that Robert could have reduced his excessive expenses in order to make child support payments to Geraldine. Given that Robert's expenses included $600.00 a month for two car notes[3] and $150.00 a month for automobile expenses, there is substantial evidence supporting the chancellor's finding that Robert could have made some payment toward his child support obligation.[4] This Court affirms the chancellor on this issue.

B. Whether the chancellor should have granted Appellant's request for modification of custody.

The Parties' Contentions
Robert argues that it is unconscionable to prevent a modification of custody based on the unclean hands doctrine as a modification of Aunnie's custody is in the child's best interests. Geraldine states that the chancellor did not err in declining to modify the decree, but appears to refer to child support rather than to custody.

Relevant Law and Analysis
Although the chancellor stated on the record that he was not granting Robert any relief requested in his petition for modification, he then noted that he was reducing Robert's child support obligation because Aunnie was living with him rather than with her mother. Apparently the chancellor had no problem with Robert being Aunnie's primary custodial parent, although he failed to legally change custody from Geraldine to Robert. Robert, Geraldine, and 18 year old Aunnie all agreed Aunnie should be in Robert's custody.
The doctrine of unclean hands cannot override the chancellor's duty to award custody in the best interests of the child. This Court agrees with the parties that a change in custody from Geraldine to Robert is in Aunnie's best interests. This Court, therefore, reverses and remands this case for a change in custody based upon the best interests and welfare of the child.

C. Whether Appellant is entitled to pay his arrearage at the rate of $100.00 per month.
Robert actually argues that the amount of arrearage as determined by the chancellor is in error. There is no error here.

IV. CONCLUSION
The chancellor did not err in finding Robert in contempt of court for failure to pay child support. Robert did not file for a modification or reduction of support promptly. When he finally did seek such a reduction, Geraldine counterclaimed with an action for contempt. Robert failed to carry his burden of proving a clear case of inability to pay, and the chancellor so found.
*288 The chancellor erred in failing to grant Robert's request for modification of custody. All parties concerned, the parents and the eighteen year old child, agreed that the child should be in Robert's custody. The child had actually been living with Robert and the chancellor reduced Robert's child support obligation to reflect this living arrangement. Apparently the chancellor was not opposed to Robert acting as Aunnie's primary custodial parent so long as he was not legally given custody of Aunnie. This Court finds that Aunnie's best interests will be served by placing her in Robert's custody. The doctrine of unclean hands cannot override the child's best interests in making a custody award. This Court reverses and remands for a change of custody. The chancellor did not err in determining the amount of Robert's arrearage.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART TO THE DESOTO COUNTY CHANCERY COURT FOR A CHANGE IN CUSTODY AS TO ONE CHILD.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., concurs in result only.
DAN M. LEE, P.J., specially concurs with separate written opinion joined by BANKS and McRAE, JJ.
DAN M. LEE, Presiding Justice, Specially Concurring:
I concur with the majority's decision to affirm the chancellor's determination of Robert's child support arrearages. In the case sub judice, the chancellor correctly found that Robert owed his daughter Mandy $7,970.00 in back child support payments. Robert erroneously thought that he could support one child and not properly provide for his other child's support. Robert's decision to properly support one child was wrong and the chancellor remedied this situation in a fair and equitable manner.
Initially, Robert was found in contempt of court and liable for $13,770.00 in back child support payments for Aunnie and Mandy. However, the chancellor correctly found that Robert's arrearage should be reduced by $200.00 per month for each month that Aunnie had lived with Robert. Accordingly, Robert's child support arrearage was reduced by $5,800.00.
The chancellor's decision to reduce Robert's child support arrearage by this sum was made to prevent the custodial parent from being unjustly enriched. Geraldine did not have custody of Aunnie from June 1990 to the date of the contempt hearing. Up until this time Robert provided for Aunnie's support. If the chancellor had awarded back child support to Geraldine for the time that Aunnie was living with Robert, the chancellor would have created a situation in which Geraldine would have been unjustly enriched. This Court in Alexander v. Alexander, 494 So.2d 365, 367-68 (Miss. 1986), recognized that under certain circumstances we should give the non-custodial parent credit for sums expended on the child while in the custody of the non-custodial parent. The Alexander Court opined:
In our opinion, when the custodial parent received full child support during the time she had custody of the child, did not complain when the child moved in with the other parent, and accepted this arrangement for 20 months with child support being paid directly to the child, the parent paying the support is entitled to full credit for all support paid to the child. He is also entitled to any additional support which he has evinced by satisfactory proof to the trial court.
Alexander, 494 So.2d at 368. See also Manning v. Tanner, 594 So.2d 1164, 1168 (Miss. 1992); Varner v. Varner, 588 So.2d 428, 434-35 (Miss. 1991).
The situation described in Alexander is clearly analogous to the case sub judice. Therefore, the legal reasoning contained therein should dictate that Robert be given credit for the child support he paid directly *289 to Aunnie while she lived with him. Thus, the chancellor's ruling correctly prevents Geraldine from being unjustly enriched and properly recognizes Robert's support payments made to Aunnie.
Accordingly, I concur that the chancellor did not err as to Robert's arrearage and concur that this case be reversed and remanded as to the issue of Aunnie's custody.
BANKS and McRAE, JJ., join this opinion.
NOTES
[1] Geraldine testified that her problems with Aunnie began when Robert bought her a car for her fifteenth birthday.
[2] Orthodontia.
[3] Robert's 1989 Toyota truck and Aunnie's 1992 Toyota.
[4] The chancellor also found excessive the $150.00 monthly dental expense, as no evidence regarding dental problems was presented, and the $50.00 monthly incidentals expense. The amount Robert paid toward Mandy's orthodontic is listed as $75.00 a month over and above the $150.00 "dental."