# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02138-SCT

*GERALD W. McINTOSH*

*v.*

*DEPARTMENT OF HUMAN SERVICES*


| | |
|---|---|
| DATE OF JUDGMENT: | 9/17/2003 |
| TRIAL JUDGE: | HON. EDWARD C. PRISOCK |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LAUREL G. WEIR |
| ATTORNEYS FOR APPELLEE: | DAVID LEE LOVE |
| | DARRELL CLAYTON BAUGHN |
| | JAMES JASON BAYLES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED – 09/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


## BEFORE COBB, P.J., EASLEY AND GRAVES, JJ.

## GRAVES, JUSTICE, FOR THE COURT:

¶1.     On October 18, 1989, the Mississippi Department of Human Services (hereinafter "DHS.") filed a complaint against Gerald W. McIntosh in the Kemper County Chancery Court.  The action was  to determine the paternity of one Deshun McDade, who had been born on June 30, 1987, to Bobbie McDade. On December 5, 1989, the chancellor entered an order compelling  McIntosh, Bobbie, and Deshun to submit to blood testing.  In March the outcome of the tests was submitted to the court; the paternity evaluation report indicated there was a 99.96% probability that McIntosh was Deshun's father.

Fully satisfied by such overwhelming scientific evidence, the court entered a judgment adjudicating McIntosh to be the father of Deshun.

¶2. In 1999 the court entered a child support order which found McIntosh to have an adjusted monthly gross income of $800, or roughly $9,600 a year. Based on this calculation, he was ordered to pay $112 per month beginning November 1, 1999.[1] Yet McIntosh did not obey the court's ruling to support his child. Because of his continuing failure to pay child support, DHS. filed a complaint seeking the delinquent funds. It also sought to have McIntosh held in contempt for his blatant failure to pay child support.

¶3. McIntosh requested additional paternity testing; this was denied by the court on the basis that he provided no expert testimony to challenge the validity of the previous paternity test. He also contended that he lacked the financial means to pay support because of an alleged disability that prevented him from working. No medical records were provided to support the claim of injury or disability; indeed, McIntosh had applied for Social Security benefits and been rejected.

¶4. The court found his inability to pay child support was unjustifiable whether he was employed or not--because even when McIntosh was employed he did not pay child support. He was found to be behind $5,125 in payments for the nearly four years of missed payments. For this gross delinquency, McIntosh was found in contempt and his incarceration was ordered by the trial court, with the condition that jail time would be suspended if McIntosh paid $500 on the back payments within 30 days. McIntosh appeals the rulings of the trial court, citing two errors. Finding none, we affirm the decision of the chancellor.

**DISCUSSION**

---

[1]$112 is exactly 14% of McIntosh's monthly salary, the amount provided for via statutory guidelines for the support of one child. *See* Miss. Code Ann. § 43-19-101 (Rev. 2000). For two children, the amount rises to 20%; three children, to 22%; four children receive 24%; and five or more children are entitled to 26% of the adjusted gross income of the supporting parent. *Id*.

¶5. The findings of fact of the chancery court, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. *Nichols v. Tedder,* 547 So.2d 766, 781 (Miss. 1989). Findings of the chancellor will not be disturbed or set aside on appeal unless the decision is manifestly wrong and not supported by substantial credible evidence, or unless the wrong legal standard was applied. *In re Guardianship of Savell,* 876 So.2d 308, 312 (Miss. 2004); *Tinnin v. First United Bank of Miss.,* 570 So.2d 1193, 1194 (Miss. 1990); *Bell v. Parker,* 563 So.2d 594, 596-97 (Miss. 1990).

### I. Did the court err in denying the request for additional paternity testing?

¶6. McIntosh argues that additional paternity testing should have been granted based upon Miss. Code Ann. § 93-9-21(1)(c) (Supp. 2003). That statute states in pertinent part that "[i]f either party challenges the original test results, the department shall order additional testing at the expense of the challenging party." Yet while the statute plainly provides a mechanism for recoupment of costs when additional testing is needed, it does not detail the procedure to challenge the validity of genetic testing.

¶7. That process is addressed in Section 93-9-23(3), which describes in pertinent part that "[i]f the court, *in its discretion*, finds cause to order additional testing, then it may do so using the same or another laboratory or expert." (emphasis added). McIntosh never supplied the trial court with any expert testimony that would show good cause why additional paternity testing was warranted. Without such evidence the trial court found that it could not allow additional testing. This was not an abuse of discretion on the part of the chancellor; indeed, it is a logical and wholly correct determination. If parties could simply set aside genetic tests with no evidence tending to disprove their validity, then paternity would never be resolved.

3

¶8. There is another reason why McIntosh's argument fails. Sections 93-9-23(2)&(3) outline in pertinent part that "[a] party may challenge the testing procedure within thirty (30) days of the date of mailing the results . . . [but] [i]f there is no timely challenge to the original test results or if the court finds no cause to order additional testing, then the [original] certified report shall be admitted as evidence in the proceeding as prima facie proof of its contents." Id. In the case sub judice, the original paternity evaluation was issued on March 28, 1990. McIntosh's request for additional paternity testing was on November 29, 1999, roughly nine years from the issuance of the original paternity evaluation. Any challenge to the paternity test or motion for additional paternity testing grossly exceeded the statutorily-provided thirty days.

¶9. For those two reasons, the trial court committed no error in refusing to grant McIntosh's request for additional paternity testing.

## II. Did the trial court err in holding McIntosh in contempt for failure to pay child support?

¶10. McIntosh argues he should not have been held in contempt because the burden of proof was on DHS to prove by a preponderance of the evidence that he was not able to pay the judgment; he further argues that DHS failed to meet this burden. This argument contradicts our established case law.

¶11. In contempt actions involving unpaid child support, a prima facie case of contempt has been established when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so. *Guthrie v. Guthrie*, 537 So.2d 886, 888 (Miss. 1989). At this point, the burden shifts to the paying party to show an inability to pay or other defense; this proof must be clear and convincing and rise above a simple state of doubtfulness. *Shelton v. Shelton*, 653 So.2d 283, 286-87 (Miss. 1995). Whether a party is in contempt is left to the chancellor's substantial discretion. *Id.* at

286. Moreover, the chancery court should be affirmed unless manifest error is present and apparent. ***Premeaux v. Smith,*** 569 So.2d 681, 683 (Miss.1990).

¶12.    Without a doubt, DHS established a prima facie case of contempt. The agency submitted evidence that showed McIntosh had never paid *any* support payments, in direct contradiction of court order. At that point, the burden shifted to McIntosh to show his inability to pay.

¶13.    McIntosh contends that he lacked the financial capability to pay his support obligation. He relies upon our decision in ***Hooker v. Hooker***, 205 So.2d 276, 278 (Miss. 1967), where we held that a husband may exonerate himself from failure to make alimony or child support payments because of his inability to pay. Yet while "a husband may exonerate himself from failure to make . . . child support payments as ordered, because of his inability to pay . . . his evidence must be made with particularity and not in general terms." ***Id.*** at 278; *see also* ***Bailey v. Bailey***, 724 So.2d 335, 337 (Miss. 1998). In ***Hooker***, the husband provided documents showing that his business and property had been foreclosed, that there were judgments for over $87,000 entered against him,[2] and that he was unable to find employment. ***Hooker,*** 207 So. 2d. at 277. Such a dramatic change in circumstances was sufficient to protect Hooker from contempt of court. ***Id***. at 278.[3]

---

[2]Adjusting for inflation using the Consumer Price Index, that amount Hooker owed in 1967 is roughly $490,000 in 2004 dollars.

[3]While a parent behind on child support payments may avoid contempt of court, they can never avoid the ultimate debt. For "[o]nce [child support rights] become vested, just as they cannot be contracted away by the parents, they cannot be modified or forgiven by the courts." ***Tanner v. Roland***, 598 So.2d 783, 786 (Miss. 1992).

¶14.   In contrast with *Hooker*, McIntosh provided no evidence of his inability to pay but merely described in general terms that he had no income or assets.  McIntosh provided no medical records to support his alleged disability.  He also provided no evidence to sustain his continued inability to seek employment.  "Willful refusal to support one's children is not the same as inability to pay." *Bailey*, 724 So.2d at 337.  Therefore, the chancery court did not err in finding McIntosh in contempt.

¶15.   As a state and as a society we have determined that it is imperative that those who have fathered children provide financial support for their well-being.  Children are too valuable to be simply cast aside. Jeffrey M. Williams, *Guidelines: Need, Process and Review*, 70 Miss. L.J. 1065, 1070-71 (2001). The world was not asked of Gerald W. McIntosh--only $112 a month.  Because he refused to pay even that modest sum in support of the child he fathered and because he had absolutely no evidence to show why he could not pay that amount, the chancery court did not err in finding him in contempt.

## CONCLUSION

¶16.   Because McIntosh presented no evidence why the original paternity test should be set aside and because he objected later than the 30-day period provided by statute, the trial court did not err in denying him a new paternity test.  Likewise, because he could show no evidence why he was unable to comply with his court-ordered child support, McIntosh was properly held in contempt by the trial court.  The judgment of the chancery court is affirmed.

¶17.   **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**