KING, C. J.,
for the Court.
¶ 1. Angela Wilbanks Cossitt (Angela) filed a petition for contempt in the Hinds County Chancery Court that alleged Johnny Kevin Cossitt (Kevin) had failed to abide by the court’s previous orders in a number of ways. After a hearing, the chancellor denied the petition for contempt. Aggrieved, Angela appeals. We find no error and affirm.
FACTS
¶ 2. On July 3, 2003, Angela and Kevin were granted a divorce by the Hinds County Chancery Court. The final judgment of divorce (divorce judgment) provided for property division, child support, and custody for Molly and Ashley, the parties’ two minor children.
¶ 3. Almost two years later, Angela filed a petition for contempt and modification of child support. She also filed a motion for attorney’s fees. In the petition, she claimed that Kevin had failed to abide by the divorce judgment. Kevin filed an answer to the petition and a counterclaim. He sought reimbursement for the children’s medical treatment and relief from the final order requiring payment for college expenses.
¶ 4. On September 12, 2006, the chancellor denied Angela’s petition for contempt and modification of child support. The chancellor granted Kevin relief under the provision in the divorce judgment that required the parties to pay the college expenses of the minor children. Further, the chancellor denied each party’s motion for attorney’s fees.
¶ 5. Aggrieved, Angela instituted this appeal.
*277 STANDARD OF REVIEW
¶ 6. Whether a party is in contempt is a question left to the substantial discretion of the trial court. Shelton v. Shelton, 653 So.2d 283, 286 (Miss.1995). However, contempt must be proven by clear and convincing evidence. Id. Further, we will not reverse the findings of the chancellor unless the chancellor was manifestly wrong or an erroneous legal standard was applied. Smith v. Smith, 607 So.2d 122, 126 (Miss.1992).
ANALYSIS
¶ 7. Angela presents a total of five allegations of error committed by the trial court. Specifically, Angela alleges that: (1) Kevin should have been found in contempt for his failure to abide by the court’s previous orders; (2) the court erred by relieving Kevin of the daughters’ college expenses; (3) the court erred by failing to restrict Kevin’s e-mail communication with his daughters; (4) the court erred by refusing to allow attorney’s fees against Kevin; and (5) the court erred when it did not grant a judgment against Kevin for damages to their daughter’s car.
I. Whether Kevin should have been found in contempt.
¶ 8. Angela alleges that the chancellor should have found Kevin in contempt for several different reasons. She alleges that: (1) Kevin failed to report his correct income to the court as required by the temporary order; (2) Kevin altered his paycheck stubs that he was required to provide Angela; (3) Kevin failed to obtain health insurance for his children; and (4) Kevin interfered with and violated Angela’s privacy.
¶ 9. A finding of contempt is a very serious matter and must be proven by clear and convincing evidence. A citation for contempt is proper when “the contem-ner has willfully and deliberately ignored the order of the court.” Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997).
A. Kevin failed to report an increase in income to the court.
¶ 10. The order awarding temporary support to Angela provided that since Kevin’s gross income was $759 a month, the child support guidelines were inappropriate. It then set child support at $400 per month or 22% of Kevin’s adjusted gross income, whichever might be greater. It further provided that “if Kevin’s income increases to a point where he shall increase his monthly child support pursuant to this temporary order, he shall be required to immediately report that increase to the court and to Angela.”
¶ 11. The chancellor’s opinion stated that “[ajlthough Kevin failed to inform the [c]ourt of his income increase at this time, he properly informed Angela and increased the child support payment amount.”
¶ 12. Angela alleges that since Kevin failed to inform the court of his increase in income, he should have been held in contempt for violating the temporary order. While the chancellor stated that Kevin failed to inform the court of a change in the amount of child support, it still declined to find Kevin in contempt. In doing so, the chancellor specifically stated that Kevin had kept Angela informed as to the amount he was making prior to divorce. Further, testimony at trial from both parties was that Kevin’s income was highly variable during that time period. Neither party was sure what amount Kevin’s next paycheck would contain. Kevin testified that his base income remained the same, and he would not have been able to attest to anything differently than that base. Further, it is undisputed that, after the temporary order until the final judgment *278 of divorce, Kevin did not miss a child support payment.
¶ 13. While we may have found Kevin in contempt for failure to report his increase in income to the court, we cannot say that the chancellor committed manifest error when he failed to find Kevin in contempt.
B. Kevin altered his pay stubs that he was required to send to Angela.
¶ 14. Angela alleges that the chancellor erred in failing to find Kevin in contempt for altering his pay stubs. Kevin was required by the divorce judgment to send copies of his pay stubs to Angela after.every pay period. Presumably, this was added in an effort to ensure that Kevin paid the proper percentage of his income in child support.
¶ 15. Kevin admitted that he began putting liquid paper over the deposit date of the pay stub. However, the remainder of the pay stub, including the pay period and amount earned, remained visible. Angela argues that Kevin’s only purpose for obscuring the deposit dates was to “willfully defeat the purpose of the final judgment.” However, Kevin stated during the hearing that he provided consecutive pay period documentation. He merely covered the deposit dates on the pay stubs to prevent them from confusing Angela.
¶ 16. Kevin did comply with the divorce judgment and provided copies of his consecutive pay stubs to Angela. Therefore, we hold that the chancellor did not abuse his discretion when he failed to find Kevin in contempt for placing liquid paper over the deposit dates on his pay stubs.
C. Kevin failed to obtain health insurance coverage for his minor daughters.
¶ 17. Angela argues that Kevin should have been held in contempt for failure to provide health insurance for his two minor daughters. The divorce judgment provides that:
As of August 1, 2003, Husband shall maintain full medical coverage for the minor children. Husband and Wife shall each pay and be responsible for one-half (½) of the minor children’s necessary medical, doctor, hospital, dental, orthodontic, optical, psychological, and/or prescription drug expenses of the children which are not covered and/or reimbursed by Husband’s insurance. If Husband is unable to maintain full medical coverage for the minor children for whatever reason, Husband shall pay and be responsible for 75% of the minor children’s necessary medical, doctor, hospital, dental, orthodontic, optical, psychological and/or prescription drug expenses of the children, and the Wife shall be responsible for 25% of same expenses.
¶ 18. This was obviously an important topic for the chancellor as he spent over two and a half pages solely on the issue of medical insurance. The chancellor found that while Kevin failed to obtain medical insurance on August 1, 2003, he was not convinced that Kevin willfully disobeyed the orders of the court. In his findings, the chancellor stated that as of August 1, 2003, Kevin did not have any employment-related group insurance available. However, Kevin did procure such coverage when it became available through his current wife’s employment. He secured coverage in June 2005, and it came into effect on July 1, 2005. The chancellor found that Kevin had provided health insurance for the children after that period of time through the date of the hearing.
¶ 19. Kevin testified that any insurance coverage other than through employment- *279 related group insurance was prohibitively expensive. Therefore, he interpreted the provision in the divorce judgment to allow him to pay for 75% of the daughters’ medical expenses if he found medical insurance to be too expensive. It was undisputed that Kevin did pay 75% of the daughters’ medical costs prior to obtaining medical insurance in July 2005. In addition, he obtained employment-related group insurance as soon as it became available.
¶20. Since Kevin did not have insurance for the children, Angela obtained medical insurance through her employment on March 1, 2004. Further, Kevin reimbursed Angela a total of $1,126 of the $3,276.48 she paid in insurance premiums from March 2004 until June 2005, when he procured medical insurance.
¶ 21. The chancellor found that Kevin “could have and should have provided full medical coverage for the minor children.” Further, the chancellor stated that the provision did not allow Kevin to provide his own method of providing health care to his daughters. It required him to be “unable” to provide insurance. However, the chancellor stated that he was not convinced by clear evidence that Kevin had willfully disobeyed the orders of the court.
¶ 22. As previously stated, a finding of contempt requires the contemnor to have willfully and deliberately disobeyed an order of the court. Bredemeier, 689 So.2d at 777. It appears that the chancellor found that Kevin was sincere when he stated that he had interpreted the order incorrectly. In support of this conclusion, Kevin upheld the remainder of the provision by paying 75% of the girls’ incurred medical costs and procuring coverage as soon as employment-related group insurance was available. Since findings of fact by a chancellor, such as whether Kevin willfully violated the order, are awarded great discretion, we cannot say the chancellor abused his discretion in failing to hold Kevin in contempt.
¶ 23. It is important to note that while the chancellor did not hold Kevin in contempt, he did require Kevin to fully reimburse the remaining $2,150.48 Angela paid in premiums for health insurance coverage from March 2004 until June 2005. In addition, the chancellor noted the fact that Kevin was not very prompt in providing health insurance information to Angela. Therefore, he required notice of coverage to be provided to Angela within thirty days of the court’s order and notice of any changes in coverage or renewals within thirty days as well. If Kevin should fail to provide proper documentation, the chancellor ordered that Angela had the right to procure health insurance through her employment with Kevin being responsible for the full amount of the premiums.
D. Whether Kevin interfered with and violated Angela’s privacy.
¶ 24. Angela alleges that the trial court erred when it failed to find Kevin in contempt for sending her various harassing e-mails. The divorce judgment provided that neither party would “molest or interfere with each other ... and each party shall respect the privacy of the other.” The excerpts from the e-mails included phrases such as “you are desperate and need help,” “BS about car tags, your legal team screwed up, I caught it,” and “whining and complaining.” However, Kevin introduced an e-mail from Angela where she called him an “a — hole.”
¶ 25. The chancellor found that “both parties had used questionable language in their email communications to one another.” Therefore, the chancellor found that neither party was innocent regarding their communications. Since neither party had clean hands when it came to the communications, the trial court was correct in not *280 finding Kevin in contempt. See Brennan v. Brennan, 605 So.2d 749, 752 (Miss.1992).
¶ 26. Since the trial court did not err in failing to find Kevin in contempt, we now turn to Angela’s remaining allegations.
II. Whether the chancellor erred by relieving Kevin of his daughters’ college expenses.
¶ 27. Angela alleges that the trial court erred in relieving Kevin of any further college expenses for the parties’ minor children. In addition, she challenges the chancellor’s finding that season football tickets, parking tickets, lockout charges, clothing, personal expenses, hair expenses, and sorority dues are not reasonable and necessary costs of a college education. The divorce judgment provided that each party was to be responsible for “one-half (½) of all reasonable and necessary costs of a college education for each child, provided ... that each child maintains full-time college status and maintains a 2.0 grade point average.”
¶ 28. Each child attended Mississippi State University after completing high school. However, each daughter received less than a 2.0 grade point average át the end of their first semesters. Therefore, the chancellor held Kevin responsible for one-half of each daughter’s college expenses for the first semester, but he relieved Kevin of any legal duty to pay any college expenses for the following semesters. While the chancellor found that it was a harsh result, he stated that “to do otherwise would completely strip the requirement of maintaining a 2.0 grade point average of all meaning.” Further, the chancellor, citing Barnett v. Barnett, 908 So.2d 833, 846-47(¶ 34) (Miss.Ct.App.2005), correctly stated that while courts generally favor a parental obligation to pay for a child’s college expenses, it must be balanced with the “child’s responsibility and aptitude to exceed at college.”
¶ 29. Angela argues that for a child to be required to maintain a 2.0 grade point average, the child must first attain a 2.0 grade point average. However, the chancellor found that the children had a semester to attain and maintain a 2.0 grade point average. He stated that colleges have decided that a semester is an adequate period of time within which to determine how successfully a student is comprehending information. Therefore, he found that a reasonable method of measuring the daughters’ success at college was likewise by semester grades.
¶ 30. After reviewing the divorce judgment we must agree with the chancellor. While the divorce judgment did not explicitly set a specific time period in which the girls could maintain a 2.0 grade point average, it is a reasonable interpretation to use the semester grades as the appropriate time period. As pointed out by the chancellor, this State favors parental support through college if the children show the aptitude to succeed. However, the divorce judgment set a 2.0 grade point average as the benchmark for the girls, which they failed to meet.
¶ 31. Since the girls failed to show the responsibility and aptitude to succeed at college, the chancellor did not abuse his discretion when he relieved Kevin of the girls’ college expenses after the first semester. See id.
¶ 32. Angela’s second allegation of error, which pertains to college expenses, is that the chancellor erred when he found that certain items should not be included in the computation of college expenses. The chancellor specifically excluded football tickets, parking tickets, lock-out charges, clothing, personal expenses, hair care, and sorority dues from the college *281 expenses. He found that these items were generally covered in child support, which he noted was not reduced when the girls began attending college. While these expenses maybe considered a part of the “college experience,” they are by no means necessary to a college education. Therefore, the chancellor did not abuse his discretion in excluding these specific items from the amount Kevin owed Angela.
III.Whether the chancellor erred by failing to restrict Kevin’s e-mail communications to his daughters.
¶ 33. Angela alleges that the chancellor should have restricted Kevin’s e-mails due to some questionable material he had forwarded to his daughters. She states that it was an abuse of discretion for the chancellor to not require Kevin to forward her all future e-mails that he might to send his daughters. The chancellor specifically addressed the issue of the emails and stated that while the daughters were older, the e-mails were “questionable in content and likely inappropriate communications from a father to his daughters.” He then urged Kevin to be more mindful of his communications with his daughters.
¶ 34. In order to restrict visitation, and likewise communication, of the non-custodial parent, evidence must be presented that the restriction is necessary to avoid harm to the child. H.L.S. v. R.S.R., 949 So.2d 794, 800(¶ 18) (Miss.Ct.App.2006). During the hearing, Kevin admitted that at least one of the e-mails he sent to his daughters was sent by accident. The different e-mails included one of several topless women and one of a man in a swimsuit that left little to the imagination. After viewing the e-mails, we cannot say that any harm has befallen the daughters, and the chancellor took the proper action in urging Kevin to be more mindful of his communications with his daughters. Therefore, this allegation of error is without merit.
IV. Whether the chancellor erred by denying Angela’s request for attorney’s fees.
¶ 35. Angela alleges that the chancellor should have granted her request for attorney’s fees. The chancellor properly stated that “without obvious findings of contempt, award of attorney’s fees is not appropriate where a party has the means to pay his or her own attorney’s fees.” Further, the decision to award attorney’s fees is left largely to the discretion of the chancellor. Magee v. Magee, 661 So.2d 1117, 1127 (Miss.1995).
¶ 36. The chancellor did not find Kevin in contempt, and as we have previously discussed, the chancellor did not abuse his discretion when he made that finding. Therefore, we are left with whether or not either party would be unable to pay his or her attorney’s fees. The chancellor went on to state that both parties had not provided sufficient evidence to show that they were unable to pay their attorney’s fees. Such a finding of fact is awarded a large amount of deference. Smith, 607 So.2d at 126. While Angela had spent a great deal on her children, the court recognized that her attorney’s fees were $5,830 and that she was represented by her father. We cannot say that the chancellor abused his discretion in denying Angela’s request for attorney’s fees.
V. Whether the chancellor erred when he did not grant a judgment against Kevin for damages to their daughter’s car.
¶37. Angela’s final allegation of error involves a car accident that occurred shortly before the contempt hearing. However, Angela acknowledges that this issue was *282 not properly brought before the chancellor. Since the issue was never brought before the chancellor, it is not ripe for our review on appeal.
CONCLUSION
¶ 38. The chancellor gave an extremely thorough order which provided facts that supported his decisions in this matter. While Angela may have alleged conduct in her complaint that could amount to contempt, she had to prove such conduct by clear and convincing evidence. After a thorough review of the record, we find that the chancellor did not abuse his discretion when he failed to hold Kevin in contempt. Since the chancellor did not find Kevin in contempt it was within his discretion to deny Angela’s request for attorney’s fees. Further, the chancellor correctly applied the divorce judgment to end Kevin’s obligation to pay for college expenses after the daughters’ first semester. Therefore, we affirm the chancellor’s judgment.
¶ 39. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., IRVING, CHANDLER, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., BARNES AND ISHEE, JJ.