# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00005-COA

**KENNETH D. TALLEY**                                                          **APPELLANT**

**v.**

**KENYA K. TALLEY**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2021 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | A. E. (RUSTY) HARLOW JR. |
| | KATHI CHRESTMAN WILSON |
| | MORGAN KAY JACKSON |
| ATTORNEYS FOR APPELLEE: | STEPHEN P. SPENCER |
| | WILLIAM C. SPENCER JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/13/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On December 21, 2021, the Monroe County Chancery Court entered an opinion and final judgment awarding Kenya Talley a monetary judgment against Kenneth Talley in the amount of $48,786.69 ($3,148.36 for unpaid medical expenses; $7,649.38 for unpaid vehicle expenses; $29,229.29 for unpaid college expenses; $5,259.66 for unpaid extracurricular expenses; and $3,500 for Kenya's attorney's fees). The chancellor determined that both children were emancipated and relieved Kenneth of certain obligations contained in their divorce agreement, but the chancellor did not relieve Kenneth from his obligation to maintain life insurance until the parties' youngest child reached age twenty-five. Aggrieved by the

chancery court's decision, Kenneth appealed.

**FACTS AND PROCEDURAL HISTORY**

¶2. Kenneth and Kenya were married on February 14, 1987. They had two children, Nathaniel (born in 1992) and Joseph (born in 1998).[1] Kenya filed a complaint for divorce on February 27, 2012. On June 4, 2014, the chancery court entered an order allowing the withdrawal of fault grounds. A "Judgment of Divorce – Irreconcilable Differences" and "Child Custody, Property Settlement, and Separation Agreement" (Agreement) were also entered that same day.

¶3. On May 23, 2019, Kenneth filed a "Petition for Emancipation, or in the Alternative, for Termination of Child Support." Kenya filed an answer to Kenneth's petition as well as a counter-petition for a citation of contempt on September 4, 2019. Kenya's counter-petition requested the chancery court to hold Kenneth in contempt for failing to pay his portion of medical bills, a purchased vehicle and maintenance costs, extracurricular activity expenses, and college expenses on behalf of their children pursuant to their divorce Agreement.[2] Kenneth filed an answer to Kenya's counter-petition on September 5, 2019. At trial, Kenneth claimed that Kenya rarely provided him with receipts or timely documentation of charges incurred and records of payments made in each category of disputed expenses on behalf of the children. Kenneth further claimed that many times he did not have the money to pay for

---

[1] At the time that the divorce agreement was entered, Nathaniel was already twenty-one years old.

[2] Kenneth's obligation to pay for medical bills, vehicle expenses, and extracurricular activities only pertained to Joseph. However, his obligation to pay for college expenses extended to Nathaniel as well.

2

the expenses, and he was not consulted about certain expenses before they were incurred. Kenneth admitted that he had not paid many of the expenses pursuant to the parties' Agreement. But Kenneth claimed that because of Kenya's actions, the ambiguity of the divorce Agreement, and his inability to pay, he should not be held in willful contempt. Kenya, Kenneth, and Joseph were the only three witnesses to testify at trial. After two days of trial, each party filed subsequent motions for attorney's fees on October 7, 2021, and October 11, 2021. Kenya filed a response to Kenneth's motion on October 12, 2021. The chancery court entered an "Opinion and Judgment" on December 21, 2021.

¶4. In its opinion and judgment, the chancery court held that both children were emancipated, and therefore Kenneth was "relieved of his current obligations in paragraphs I, III, IV, V, VI and VII of their divorce agreement." Further, the court held that "the credible proof failed to demonstrate a material and substantial change" in connection with Kenneth's obligation to maintain a life insurance policy. Therefore, Kenneth had not been relieved of his obligation to maintain the insurance. The chancery court granted Kenya a monetary judgment in the amount of $48,786.69 for Kenneth's portion of the expenses related to the children to be paid at a rate of $400 per month with interest at five percent per annum until satisfied. The court noted that Kenneth was given credit for certain payments that he made toward his obligations. The court also outlined charges that were disallowed despite Kenya's request. More specifically, those charges were for private high school tuition and purchases related to Joseph's farm animals. Finally, the chancery court granted Kenya's request for attorney's fees in the amount of $3,500. Kenneth filed his notice of

3

appeal on December 22, 2021.

## STANDARD OF REVIEW

¶5.     "The scope of review in domestic cases is limited." *Bounds v. Bounds*, 935 So. 2d 407, 410 (¶6) (Miss. Ct. App. 2006). This Court will not reverse the finding of the trial court unless it abused its discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Id*. (citing *Denson v. George*, 642 So. 2d 909, 913 (Miss. 1994)). In *Riley v. Riley*, 196 So. 3d 1159, 1162 (¶9) (Miss. Ct. App. 2016), we explained:

> "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we." *Williamson v. Williamson*, 81 So. 3d 262, 266 (¶11) (Miss. Ct. App. 2012) (citing *Morreale v. Morreale*, 646 So. 2d 1264, 1267 (Miss. 1994)). "Contempt is to be determined upon the facts of an individual case and is a matter for the trier of fact." *Id*. at 266-67 (¶11) (citing *Milam v. Milam*, 509 So. 2d 864, 866 (Miss. 1987)). "This Court will not reverse a contempt citation where the [trial court's] findings are supported by substantial credible evidence." *Witters v. Witters*, 864 So. 2d 999, 1004 (¶18) (Miss. Ct. App. 2004) (citing *Varner v. Varner*, 666 So. 2d 493, 496 (Miss. 1995)).

## ANALYSIS

I.      **Did the chancery court err by failing to modify the life insurance provision of the parties' divorce Agreement?**

¶6.     Kenneth claims that the chancery court erred by failing to modify the parties' divorce Agreement and terminate his obligation to maintain life insurance. Paragraph VIII of the parties' divorce Agreement stated, "Husband will maintain a life insurance policy of at least One Hundred Fifty Thousand Dollars ($150,000.00) with Wife named as beneficiary until such time as the parties' youngest child reaches twenty-five (25) years of age."

¶7.     Kenneth's original petition did not plead with any specificity the relief he requested

concerning life insurance. His petition more generally requested that "all financial obligations on behalf of the parties' minor children of the Plaintiff to the Defendant, should be terminated and/or modified." At trial, Kenneth testified, "I have to pay for this life insurance until . . . the youngest one is 25. . . . And I just think that's a mighty long time to do that. . . . I want to pay it because I want to, not because I'm forced to in court. If I want to buy them that or if I want to get more for them or whatever, that's my prerogative, but I just wanted to get it into my control rather than her control." Kenneth did not provide the chancery court with any further information about the current life insurance policy, including the premium amount, or his ability or inability to pay it. Nor did Kenneth provide any caselaw or legal authority to support his position that his obligation to carry the policy should be terminated.

¶8. Furthermore, the provision of the parties' divorce Agreement concerning life insurance is governed by contract law and will be interpreted according to contract principles. In *Lestrade v. Lestrade*, 49 So. 3d 639, 642-43 (¶10) (Miss. Ct. App. 2010), this Court held:

> "A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986). These agreements are "fixed and final, and may not be modified absent fraud or [a] contractual provision allowing modification," *Weathersby v. Weathersby*, 693 So. 2d 1348, 1352 (Miss. 1997), or where, because of a scrivener's error, the instrument does not reflect the actual agreement of the parties, *Ivison v. Ivison*, 762 So. 2d 329, 335-36 (¶21) (Miss. 2000). "[W]hen parties in a divorce proceeding have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it just as we do when persons seek relief from improvident

5

contracts." *Id*. at 334 (¶14) (citing *Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990)).

Kenneth does not allege fraud or any other extenuating circumstance that would warrant the modification of the parties' divorce Agreement. Therefore, this argument that the chancery court's ruling should be reversed is without merit.

## II.     Did the chancery court err by finding Kenneth in contempt?

¶9.     Kenneth claims that the chancery court erred by finding him in willful contempt for failing to pay his portion of certain expenses incurred on behalf of the children, including medical expenses, vehicle expenses, college expenses, and extracurricular expenses. Kenneth claims that the evidence Kenya presented at trial was insufficient to support the judgment.

¶10.     In *McIntosh v. Department of Human Services*, 886 So. 2d 721, 724-25 (¶11) (Miss. 2004), the Mississippi Supreme Court explained:

> In contempt actions involving unpaid child support, a prima facie case of contempt has been established when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so. *Guthrie v. Guthrie*, 537 So. 2d 886, 888 (Miss. 1989). At this point, the burden shifts to the paying party to show an inability to pay or other defense; this proof must be clear and convincing and rise above a simple state of doubtfulness. *Shelton v. Shelton*, 653 So. 2d 283, 286-87 (Miss. 1995). Whether a party is in contempt is left to the chancellor's substantial discretion. *Id*. at 286. Moreover, the chancery court should be affirmed unless manifest error is present and apparent. *Premeaux v. Smith*, 569 So. 2d 681, 683 (Miss. 1990).

### A.     Medical Expenses

¶11.     Paragraph III of the parties' divorce Agreement stated:

Wife shall maintain health insurance coverage on the parties' minor child so

long as it is available through her employer and the parties' shall each pay for one-half (½) of all medical, dental, optical, hospital and pharmaceutical bills incurred by the minor child that are not covered by insurance. Husband will be given thirty (30) days to pay his one-half (½) of said expenses or will make arrangements to pay via a payment plan for larger sums.

At trial, Kenya testified that Kenneth owed $3,148.36 for his portion of Joseph's medical expenses pursuant to the parties' agreement. In conjunction with her testimony, Kenya referred to Exhibit 9, a detailed summation of expenses that she prepared with attached proof of payment including copies of checks, credit card statements, and receipts. Kenya testified that she had numerous verbal conversations with Kenneth about Joseph's medical expenses as they were incurred. While Kenya testified that she provided some bills to Kenneth via text message and email, Kenneth made it extremely difficult for her to provide him with information concerning expenses, and for that reason some bills were not sent to him. According to Kenya, Kenneth stated that he did not want her to send bills by email, and he refused to provide her with a working email address. Kenya also testified that she could no longer retrieve all the sent text messages concerning medical expenses from her old phone because the battery exploded, and a cell phone technician determined there was nothing that could be done to retrieve those documents. Neither party disputed that Kenneth was present at Joseph's numerous surgeries and some doctors' appointments and was aware those expenses were being incurred. However, Kenneth failed to pay his portion of the medical expenses listed in Exhibit 9 in full.

¶12. Kenneth argues that Kenya did not provide him with the majority of Joseph's medical bills and that he was unaware of what he actually owed after the insurance portion was paid.

At trial, Kenneth admitted that he did not make any effort to contact any medical providers to inquire about the status of his son's accounts even after knowing that services had been rendered. Kenneth testified that all the medical expenses listed in Kenya's Exhibit 9 seemed reasonable and further stated, "I would think that she paid it if it's listed here." Finally, in his brief, Kenneth claims that twelve of the medical bills listed in Exhibit 9 predated the divorce Agreement and should be disallowed by the court; however, Kenneth did not dispute the charges on that basis at trial. "In *Southern v. Mississippi State Hosp.*, 853 So. 2d 1212, [1214-15 (¶5)] (Miss. 2003), we reiterated the important procedural tenet that '[a] trial judge cannot be put in error on a matter not presented to him.'" *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005). "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Id*. (citing *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1989)). Because Kenneth failed to set forth this argument at trial, it is waived and procedurally barred on appeal. Nonetheless, given the proof and testimony presented at trial and Kenneth's failure to contest the expenses that predated the divorce agreement, we find no error in the chancery court's ruling that held Kenneth in willful contempt for unpaid medical bills in the amount of $3,148.36.

### B. Vehicle Expenses

¶13. Paragraph IV of the parties' divorce Agreement stated:

> The parties shall equally divide the cost of a suitable automobile for the parties' minor child when he reaches legal driving age, not to exceed Eight Thousand Dollars ($8,000.00) and each party shall pay for one-half (½) of all maintenance, repairs and insurance on said vehicle until such time as the minor

child completes college or reaches twenty-one (21) years of age, whichever occurs first.

At trial, Kenya testified that Kenneth owed $7,649.38 for his portion of Joseph's vehicle and the associated maintenance pursuant to the parties' Agreement. In conjunction with her testimony, Kenya again referred to Exhibit 9, which made specific reference to the vehicle expenditures and the proof of the expenses. According to Kenya, Kenneth did not make any payments toward any of Joseph's vehicle expenses with the exception of two tires, which Kenya claimed were a Christmas present. Much like the medical expenses previously discussed, Kenya testified that she and Kenneth had multiple conversations both orally and through text messages about the vehicle expenses, but Kenneth never provided any financial assistance. Joseph also testified that his father was aware that he had a vehicle but other than the two tires, Kenneth did not contribute to its initial purchase or upkeep.

¶14. Kenneth argues that the evidence at trial was insufficient for the chancellor to find him in willful contempt for not paying the vehicle expenses and claims that he was not consulted about the expenditures. He alleges that he was unaware of the expenses and was learning about them for the first time during the chancery court proceeding. He further argues that the court should have given him credit for the tires that he purchased for the vehicle. However, Kenneth did not present any proof regarding the cost of the tires, and Kenya testified that the tires were a Christmas gift to Joseph. Much like the medical expenses, Kenneth admitted that he did not make any payments toward Joseph's vehicle expenses other than the tires. Given the proof and testimony presented at trial, we find no error in the chancery court's holding Kenneth in contempt for unpaid vehicle expenses in the

9

amount of $7,649.38.

## C. College Expenses

¶15.    Paragraph V of the parties' divorce Agreement stated:

> Each party will be responsible for payment of one-half of all tuition, room, board, books and other college expenses for both of the parties' children to attend college until such time as the children reach twenty-one (21) years of age or obtains a bachelor's degree, whichever occurs first.

At trial, Kenya testified that Kenneth owed $29,229.29 for his portion of Joseph's and Nathaniel's college expenses pursuant to the parties' Agreement. In conjunction with her testimony, Kenya again referred to Exhibit 9, which specifically referenced the college expenditures and the proof of the expenses. Exhibit 9 included an itemized list of expenses for Joseph, including tuition, books, food, gas, and student loans for both Joseph and Nathaniel. According to Kenya, Joseph did not have a food plan while attending college, which necessitated all the expenditures listed for food. It is undisputed that Kenneth made a single contribution to Joseph's college tuition in the amount of $987.

¶16.    According to Kenneth, the evidence at trial was insufficient to show that he owed $29,229.29 in college expenses. He argues that Kenya did not provide him with any proof that the expenses were incurred before Joseph and Nathaniel turned twenty-one pursuant to the divorce Agreement, or that Kenya had paid her half of the student loans. Finally, he alleges that he should not have been held in contempt because Paragraph V of the divorce Agreement was ambiguous, and he did not believe that many of the expenditures that Kenya listed in Exhibit 9, specifically the charges for food, could be considered college expenses. There was no proof at trial that Kenneth made any attempts to contact the school or find out

10

what expenses were outstanding for either child's college expenses. It was undisputed at trial that prior to the parties' divorce, they had a certificate of deposit (CD) (valued at approximately $2,500) set aside for Joseph's education; however, because of Kenneth's failure to comply with certain debt obligations pursuant to their divorce agreement, a bank seized the CD as collateral. The chancery court held that each party should be responsible for half of each child's student loan balance and that Kenneth was in willful contempt for his failure to pay for his portion of the remainder of the college expenses incurred and detailed in Exhibit 9.

¶17. In *Wray v. Langston*, 380 So. 2d 1262, 1264 (Miss. 1980), the Mississippi Supreme Court held that "[t]he duty of a parent to provide a college education for his or her child contemplates support in addition to tuition and college costs, without which, provision for the college education would be in vain." In the case at hand, the parties' divorce Agreement specifically provided for "all tuition, room, board, books and **other college expenses**." (Emphasis added). Kenya testified that each of the expenses listed in Exhibit 9 were reasonable and contemplated in paragraph V of the parties' divorce Agreement. Given the proof and testimony presented at trial, we find no error in the chancery court's holding Kenneth in contempt for unpaid college expenses in the amount of $29,229.29.

### D. Extracurricular Expenses ($5,259.66)

¶18. Paragraph VI of the parties' divorce Agreement stated:

> Each party shall pay one-half of the cost of extracurricular activities for the parties' minor child until such time as the minor child reaches twenty-one (21) years of age. Husband shall have sixty (60) days to reimburse Wife for said expenses once he receives notice of same.

11

At trial, Kenya testified that Kenneth owed $5,259.66 for his portion of Joseph's extracurricular expenses pursuant to the parties' agreement. In conjunction with her testimony, Kenya again referred to Exhibit 9, which specifically referenced the extracurricular expenditures and the proof of the expenses. Exhibit 9 included an itemized list of Joseph's expenses, including private school tuition, church trips, basketball, robotics, farm animals, graduation, prom, and other various expenses. According to Kenya, Joseph was very active in school and church activities, and Kenneth was aware of these expenses and schedules. Kenya claimed that Kenneth told her many times that he did not have the money to help out with Joseph's extracurricular expenses. However, Kenneth testified that he had access to money to pay off his personal expenses that he had incurred including improvements to the home that he shared with his current wife. Kenneth made a contribution toward a church ski trip, but the memo line of the check referenced the payment as a Christmas present. Ultimately, the chancellor disallowed Kenya's request for half of private school tuition and expenses related to Joseph's farm animals but held Kenneth in willful contempt for not paying the remaining expenses in Exhibit 9.

¶19. Similar to Kenneth's arguments regarding all the other issues of contempt, he claims that the evidence was insufficient to support the chancellor's finding that he was in willful contempt for failing to pay for Joseph's extracurricular expenses. He claims that the divorce Agreement was ambiguous as to what expenses were covered in paragraph VI of the Agreement, and therefore he should not be held in contempt. He again claimed that he was not provided with receipts for the payments that Kenya is now seeking reimbursement.

Kenneth admitted that he did not pay for all the expenses incurred for Joseph's extracurricular activities. Given the documented proof and testimony presented at trial, we cannot conclude that the chancery court erred by finding Kenneth in willful contempt of the parties' divorce Agreement.

### III.   Did the chancery court err by awarding Kenya attorney's fees?

¶20.   Kenneth argues that because the chancellor's judgment of contempt was improper, so too was the award for attorney's fees associated with it. "'[A]n award of attorney's fees in a contempt case is proper . . . [and] is largely entrusted to the sound discretion of the chancellor.' . . . The chancery court must first consider whether a party willfully violated the court's order." *Price v. Price*, 5 So. 3d 1151, 1158 (¶19) (Miss. Ct. App. 2009) (citing *In re Hampton*, 919 So. 2d 949, 958 (¶37) (Miss. 2006)). Because the chancery court did not err in finding Kenneth in willful contempt for failing to pay expenses on behalf of the minor children pursuant to the parties' divorce Agreement, the chancery court did not err in awarding Kenya attorney's fees.[3]

---

[3] In her brief on appeal, Kenya also requested that this Court award her attorney's fees associated with this appeal pursuant to *Grant v. Grant*, 765 So. 2d 1263, 1268 (¶19) (Miss. 2000). In a similar case, *Latham v. Latham*, 261 So. 3d 1110, 1115-16 (¶23) (Miss. 2019), the Mississippi Supreme Court held:

> While the Court has declared that the better practice would be for a party seeking attorney's fees on appeal to file a motion in the Court, we now clarify that Rule 27(a) of the Mississippi Rules of Appellate Procedure requires it. Here, Michele did not file a motion requesting attorneys' fees on appeal; rather she buried a one sentence request in her brief. Such requests do not comport with the Mississippi Rules of Appellate Procedure.

Because Kenya's request for appellate attorney's fees does not comport with Rule 27, we decline to consider her request at this time.

**CONCLUSION**

¶21. After reviewing the record, we find that the chancery court did not err by failing to modify the life insurance provision of the parties' divorce Agreement. Further, we find that the chancery court did not err by finding Kenneth in willful contempt for his failure to pay his one-half portion of medical expenses, vehicle expenses, college expenses, and extracurricular expenses for the parties' children pursuant to their divorce Agreement. Finally, we find no error in the chancellor's award of attorney's fees to Kenya. However, we decline to consider Kenya's request for appellate attorney's fees at this time.

¶22. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. BARNES, C.J., NOT PARTICIPATING.**