FAIR, J.,
for the Court:
¶ 1. After twenty years of marriage, Gary and Alisa Rolison were divorced on the ground of Alisa’s adultery. Alisa appeals the chancellor’s judgment awarding custody of their four children to Gary, asserting that the chancellor failed to apply the history-of-domestic-violence presumption, failed to consider the children’s preference, disregarded reports of the guardian ad litem (GAL) and the Department of Human Services (DHS), and punished her for adultery. Finding that the chancellor’s decision was within his discretion, discussed appropriately on the record, and supported by the evidence, we affirm.
FACTS
¶ 2. The chancellor held a bifurcated trial and first considered grounds for divorce and custody. In his bench opinion, the chancellor stated that he was not happy with either of the parents. The GAL submitted a written report and recommended that custody of the oldest child, a seventeen-year-old girl with behavioral problems, be awarded to Alisa and that custody of the three other children be awarded to Gary. DHS also conducted an investigation, and its caseworker made the same recommendation. Ultimately, the chancellor rejected the expressed preference of the two oldest children and the recommendations of the GAL and DHS.
¶ 3. On appeal, Alisa asserts four errors: (1) the chancellor did not apply the family-violence statutory presumption; (2) the chancellor improperly rejected the custody recommendations of the GAL and the DHS caseworker; (3) the chancellor failed to explain why he disregarded the children’s preference; and (4) the chancellor punished her for adultery by awarding custody to Gary. Alisa requests that this Court reverse the chancellor’s custody decision and order him to explain his reasoning in compliance with the established requirements for custody decisions.
STANDARD OF REVIEW
¶ 4. This Court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Benal v. Benal, 22 So.3d 369, 372 (¶ 4) (Miss.Ct.App.2009) (quoting Chapel v. Chapel, 876 So.2d 290, 292 (¶ 8) (Miss.2004)). If the chancellor’s findings are supported by substantial evidence, then we will affirm. Minter v. Minter, 29 So.3d 840, 850 (¶ 36) (Miss.Ct.App.2009).
DISCUSSION
1. History of Perpetrating Family Violence
¶ 5. Mississippi Code Annotated section 93-5-24 (Rev.2004) provides for determi *1138 nation of child custody in divorce cases. Subsection (9)(a)(i) establishes a rebuttable presumption regarding family violence:
[I]t is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party. The court shall make written findings to document how and why the presumption was or was not triggered.
¶ 6. The statute requires that if a chancellor finds a history of perpetrating family violence, the rebuttable presumption is triggered. The chancellor must then consider six factors to determine whether or not the presumption has been rebutted and make “written findings” to document his consideration. Miss.Code Ann. § 93-5-24.
¶ 7. The Mississippi Supreme Court has one published decision addressing this presumption, J.P. v. S.V.B., 987 So.2d 975 (Miss.2008). In J.P., the chancellor removed a child from his parents’ custody because the father had a history of perpetrating domestic violence, and the mother continued to reside with him. Id. at 980 (¶¶ 11-12). The supreme court upheld awarding custody to the maternal grandparents explaining:
The applicable statute [§ 93-5-24] clearly required the chancellor to consider all of the above-listed factors in ascertaining whether the rebuttable presumption has been overcome, and the chancellor “shall make written findings to document how and why the presumption was or was not rebutted.” That being said, a chancellor in these cases must specifically address each factor, failing which reversible error may quite likely result. However, from the record before us in today’s case, we can safely say that while the chancellor did not specifically refer in writing to all the factors enumerated in her judgment, she no doubt considered those factors in making the custody determination. The chancellor made sufficient, specific findings to support her conclusion that the [parents] did not provide evidence to rebut the presumption outlined in Section 93-5-24(9)(a)(iii) and (iv). Since these findings were supported by substantial evidence in the record, we are duty-bound not to reverse on this issue.
J.P., 987 So.2d at 981-82 (¶ 16).[1]
¶8. Alisa contends the chancellor should have found that Gary had a history of family violence. Then, if the chancellor still intended to award Gary custody, he should have made written findings explaining why the presumption “was or was not rebutted.” Miss.Code Ann. § 93-5-24.
¶ 9. The record contains evidence of both parents’ actions that could be construed as perpetrating family violence. The chancellor found that at times, Gary was aggressive with the children and had a foul mouth. Alisa asserted that Gary once beat her with a “stacking stick” when she let a cow escape and that Gary spanked the children until they were bruised. Gary admitted that he disciplined his children *1139 corporally until the chancellor prohibited him from doing so during the pendency of this proceeding.
¶ 10. There is also evidence of Alisa’s perpetrating family violence. Alisa has bipolar disorder, borderline personalty disorder, and ADHD. She is taking medication and receiving treatment but has shoplifted at numerous stores and blamed her behavior on her medication. Alisa admitted being aggressive with the children. After a fight with one child, Alisa had to have an operation due to a spleen injury.
¶ 11. Both parents admitted to behaving aggressively with the children, but the only evidence of any serious injury was inflicted on Alisa by one of the children. We find that the chancellor did not abuse his discretion in refusing to apply the statutory presumption against Gary or Alisa. See Thompson v. Hutchinson, 84 So.3d 840, 844 (¶¶ 15-19) (Miss.Ct.App.2012).
2. The Albright Factors
¶ 12. Alisa directs this Court’s attention to the chancellor’s discussion of only one Albright[2] factor — the expressed preference of a child for his custodial parent. The statute requires the chancellor to explain why the child’s preference was not followed, and Alisa asserts the chancellor failed to do so. See Mississippi Code Annotated § 93-11-65 (Supp.2012). Her appeal, however, implies a desire for a change in result, so we briefly discuss the other factors.

a. The Other Factors

¶ 13. The chancellor addressed each Al-bright factor and discussed them individually. The oldest child is in counseling, but nothing under this factor favored one parent over the other. Continuity of care was with Alisa prior to separation. The chancellor found that both parents had faults and judged their parenting skills equal. Both had a willingness and capacity to provide primary care.
¶ 14. Alisa is a teacher, and Gary works in his family’s logging operation. Both have stable employment, but Gary has worked longer. They have similar employment responsibilities, and neither had a job less favorable than the other. Both parents are about forty and physically healthy, though Alisa suffers from psychological disorders for which she is taking medication. Each parent is loved by the children equally, but the moral-fitness factor favored Gary. Both have decent homes, and the children would attend the same schools from either home. Gary had a more stable home environment because of Alisa’s on-again, off-again relationship with her boyfriend.

b. Children’s Preference

¶ 15. The two oldest children expressed a preference to reside with their mother, although one would prefer joint custody over being forced to choose. The two youngest expressed no preference because they were not eligible to do so. When the chancellor rejected the preference of the older two children, it triggered a statutory discussion requirement.
¶ 16. Mississippi Code Annotated section 93-11-65 (Supp.2012) is another legislative enactment that requires a chancellor to explain his decision and is likely the statutory basis for the required Albright analysis. After establishing that a child over twelve years old may express a custodial preference to the chancellor, the statute provides: “The chancellor shall place on the record the reason or reasons for which the award of custody was made and explain in detail why the wishes of any child were or were not honored. Miss. Code Ann. § 93-ll-35(l)(a).
*1140 ¶ 17. The oldest daughter expressed conflicting preferences regarding custody, and the chancellor discussed his reasons for not honoring her wishes: “I think the reason that [the seventeen year old] wants to live with mother is because [she] can call the shots.... I think it’s her wanting to be the chief.”
¶ 18. The chancellor also discussed a few specific examples of conduct that caused concern. Alisa reconnected with a male friend from college whom she had not seen in twenty years. With her children in the house, Alisa slept in same bed as her friend and allowed his teenaged son to sleep with her oldest daughter. The chancellor found that this is when the daughter began having sexual intercourse. Since that time, she has also had sex with others while in the temporary custody of her mother.
¶ 19. A school teacher testified that Alisa drank, smoked marijuana, and acted like a teenager after she and Gary separated. Alisa exposed her teenaged daughter to her boyfriend in violation of a temporary court order, and she was arrested for using a credit card taken from a purse she found in a parking lot. She told the children “it’s just like finding a hundred dollar bill on the side of the road.”
¶ 20. We find that the chancellor appropriately explained his reasons for awarding custody to Gary instead of Alisa, even though the oldest children expressed a preference to reside with their mother.
3. GAL and DHS Reports
¶ 21. In his bench opinion, the trial judge opined:
The Court has read the guardian ad litem’s report. I have all of the respect in the world for [the GAL][;] he has been guardian ad litem in this court for a long time on numerous cases. He is very thorough. He’s very good at it and probably the best I’ve ever seen. And I have a lot of respect for [DHS employee][;] I’ve known her since she’s been— I’ve been judging she’s been DHS, and she does a good job and she’s given me a report. And I’ve taken into consideration both of the reports.
¶ 22. After discussing the Albright factors, the chancellor noted that the DHS employee made the same recommendation as the GAL — award custody of the oldest child to her mother and custody of the three younger children to their father. “I’m not going to accept those recommendations,” the chancellor said, adding that it is “the first time that I have not accepted the recommendations.”
¶ 23. It is clear that the chancellor was worried about the oldest daughter. There was evidence that she seemed to be doing well with her father. For the six months preceding the hearing, she and her father had experienced no problems, and she gave a statement at one point in the proceedings that she preferred him as her custodial parent. There was also concern over keeping the siblings together and Alisa’s complicity in her oldest child’s promiscuity.
¶ 24. The chancellor properly discussed the recommendation of the GAL and the DHS caseworker and explained his reasons for deviating from their suggestion. See Floyd v. Floyd, 949 So.2d 26, 29 (¶8) (Miss.2007). The stated reasons are sufficient to support the chancellor’s decision.
4. Punishment for Adultery
¶ 25. Alisa claims the chancellor improperly punished her for committing adultery by awarding custody of the children to Gary. This asserted error is based on a typographical error in the trial record. The transcript has since been corrected by the court reporter with the con-
*1141 sent of counsel for both parties. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF TIPPAH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.

. This Court rendered a similar decision in Lawrence v. Lawrence, 956 So.2d 251, 260-61 (¶¶ 33-35) (Miss.Ct.App.2006), two years earlier and has since discussed the statute four times, most recently in Thompson v. Hutchinson, 84 So.3d 840, 844 (¶¶ 15-19) (Miss.Ct.App.2012).

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).