ISHEE, J.,
for the Court:
¶ 1. In 2012, the Pearl River County Chancery Court issued a final judgment regarding the custody of Jeremy .P. Jenkins’s and Heidi Wilkinson-Braddy’s minor child, Isaiah Jenkins. The chancery court awarded primary physical custody of Isaiah to Jeremy, with the parties sharing joint legal custody. Heidi was granted visitation rights. Heidi now appeals, arguing: (1) the chancellor committed reversible error by failing to make specific written findings on the statutory presumption set forth in Mississippi Code Annotated section 93-5-24(9) (Rev.2004); and (2) the chancellor erred in awarding physical custody of Isaiab' to Jeremy pursuant to an Albright[1] analysis. Finding no error, we affirm.
*964 STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Jeremy and Heidi began their relationship in 2003 and resided together in Carriere, Mississippi. Although they were never married, the couple had two children together, Jeremy Jenkins Jr. and Isaiah Jenkins. Jeremy Jr., born September 4, 2003, is in the custody of Heidi’s mother, Sherry Wilkinson, and is not at issue in this case.
¶ 3. In 2005, the couple separated. Upon their separation, Heidi moved into her father’s home in Carriere and was residing there when Isaiah was born on September 6, 2006. The record is unclear as to the exact date, but a few months after Isaiah’s birth, Jeremy gained custody of Isaiah.
¶ 4. According to Heidi, Jeremy, accompanied by his brother, entered her father’s home uninvited and asked to take Isaiah. She testified that, when she refused, Jeremy held her down and threatened to break her arm if she did not release Isaiah. Heidi ultimately relented, and Jeremy took Isaiah with him. Jeremy contends that, while Heidi did not fully agree with him removing Isaiah from her care, he did not threaten her. Also, he contends that she had informed him that she could no longer care for Isaiah. There was no custody order in place at this time.
¶ 5. Following this change in custody, Jeremy began to control the time, place, and manner of Heidi’s visitations. Heidi attempted to take Isaiah several times and, according to Heidi, she was stopped violently by Jeremy and his family each time. On one occasion, Heidi stated, she was pushed by Jeremy’s sister, Crimpson, when Heidi went to Jeremy’s mother’s house on Mother’s Day in 2008 to visit Isaiah. Heidi was ultimately forced to leave the property. Jeremy testified that Heidi was allowed to visit Isaiah freely, but the agreement between the two parties was that Heidi was unable to care for Isaiah permanently. Jeremy also stated that Heidi would often miss scheduled visitations with Isaiah.
¶ 6. Jeremy maintained full custody of Isaiah from November 2006 to July 2009, providing complete financial and physical care to him. At some point in 2009, Heidi moved to New Orleans, Louisiana. On July 9, 2009, Heidi visited Isaiah at Jeremy’s home while Jeremy was at work. Jeremy’s wife, Teresa, testified that Isaiah was swimming in the pool in the backyard when Heidi arrived. Heidi asked for Isaiah’s basketball, and Teresa went to look for it. At that time, Heidi grabbed Isaiah, threw him in her truck, unrestrained by a seat belt, and took him back to her residence in New Orleans. Heidi testified that Jeremy and his family followed her back to Louisiana, threatened her, and demanded she give Isaiah to them.
¶ 7. On July 15, 2009, after filing for a temporary restraining order, Heidi was granted an order of protection in the state of Louisiana for Isaiah and herself against Jeremy. On July 21, 2009, Jeremy filed a complaint for child custody and other relief in the Pearl River Chancery Court seeking custody of Isaiah. On July 29, 2009, the order of protection was dismissed in Louisiana, and Heidi was ordered to return to Mississippi with Isaiah.
¶ 8. Heidi returned to Mississippi on July 29, 2009, with her boyfriend, Darrell, and Isaiah to stay with her mother, Sherry. That same day, Jeremy showed up at Sherry’s home attempting to regain custody of Isaiah. Heidi testified that Jeremy, Teresa, Crimpson, and another friend entered Sherry’s property with the intent of taking Isaiah by force. A violent altercation ensued in Sherry’s front yard among all parties present, except for Sherry, who left with Isaiah. According to Heidi, Jere *965 my then forced his way into the home and attacked her; she then stabbed him with a knife in self-defense. At the time of trial, both Heidi and Jeremy had pending criminal charges against them regarding this incident.
¶ 9. After the altercation, Heidi returned to Louisiana with Isaiah. On August 3, 2009, Jeremy was granted temporary custody by the Pearl River County Chancery Court. Jeremy regained temporary custody of Isaiah on August 12, 2009, and was awarded sole physical custody of Isaiah on August 24, 2009. On March 10, 2010, a temporary order was entered, granting Heidi visitation rights. On May 4, 2010, Tara Kellar was appointed as a guardian ad litem (GAL). A second temporary order was entered on May 11, 2011, awarding Heidi summer visitation with Isaiah. A third temporary order was entered on August 25, 2011, resetting the trial to January 26, 2012, and further defining Heidi’s visitation schedule. From August 2009 to January 2012, Jeremy retained sole custody of Isaiah, providing full maintenance and support to him.
¶ 10. The chancellor entered a final judgment on March 6, 2012, awarding sole physical custody of Isaiah to Jeremy. Heidi was granted visitation rights. Aggrieved, Heidi now appeals.
STANDARD OF REVIEW
¶ 11. “In a case disputing child custody, the chancellor’s findings will not be reversed unless manifestly wrong [or] clearly erroneous, or the proper legal standard was not applied.” Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003) (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 8) (Miss.2002)). The Mississippi Supreme Court has found that “[i]t is the role of the chancellor to ascertain whether witnesses and evidence are credible and the weight to give each.” Robison v. Lanford, 841 So.2d 1119, 1122 (¶ 9) (Miss.2003) (citing Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994)). Furthermore, “we, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified.... ” Mosley v. Mosley, 784 So.2d 901, 905 (¶ 15) (Miss.2001) (citing Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
DISCUSSION
I. History of Perpetrating Family Violence
¶ 12. Mississippi Code Annotated section 93-5-24 (Rev.2004) provides for determinations of child custody. Subsection (9)(a)(i) states in pertinent part:
In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody[,] or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party. The court shall make written findings to document how and why the presumption was or was not triggered.
Miss.Code Ann. § 93 — 5—24(9)(a)(i).
¶ 13. Accordingly, the rebuttable presumption is triggered if a chancellor finds a history of perpetrating family violence. As noted in the statute, the chancellor must make written findings to document his consideration of the presumption and any rebuttal of the presumption. In determining whether or not the presumption *966 has been overcome, the chancellor must consider the following factors:
1. Whether the perpetrator of family violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child because of the other parent’s absence, mental illness, substance abuse or such other circumstances which affect the best interest of the child or children;
2. Whether the perpetrator has successfully completed a batterer’s treatment program;
3. Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate;
4. Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate;
5. If the perpetrator is on probation or parole, whether he or she is restrained by a protective order granted after a hearing, and whether he or she has complied with its terms and conditions; and
6. Whether the perpetrator of domestic violence has committed any further acts of domestic violence.
Miss.Code Ann. § 98 — 5—24(9)(a)(iii).
¶ 14. Heidi argues that the chancellor failed to make specific written findings when she presented evidence of domestic violence. She contends that the chancellor should have specifically addressed each incident of domestic violence to determine whether or not the presumption had been triggered. Then, if the presumption was triggered, the chancellor should have made specific written findings as to whether or not the presumption had been rebutted.
¶ 15. The record in this case contains evidence of numerous violent incidents involving both parties. The chancellor addressed this evidence in both the trial proceedings and in his final written judgment. Even Heidi admits that the domestic-violence evidence was addressed by the chancellor in both his questioning of the GAJL and in his final judgment.
¶ 16. The supreme court addressed the rebuttable statutory presumption in J.P. v. S.V.B., 987 So.2d 975 (Miss.2008). In that case, the Court upheld a chancellor’s decision in finding a history of perpetrating family violence that triggered the presumption. Id. at 980 (¶ 12). The appellant argued that the presumption had been rebutted and the chancellor failed to refer in writing to the six factors required by the applicable statute in considering whether the presumption had been rebutted or not. Id. at 981 (¶ 13). The Court explained:
[A] chancellor in these cases must specifically address each factor, failing which reversible error may quite likely result. However, from the record before us in today’s case, we can safely say that while the chancellor did not specifically refer in writing to all the factors enumerated in her judgment, she no doubt considered those factors in making the custody determination.
Id. at 981-982 (¶ 16).
¶ 17. While the chancellor in the case at hand may not have found the presumption to be applicable, he did make written findings based on his consideration of the domestic-violence evidence. The chancellor fully addressed these issues during the trial proceedings as well as in his final written judgment. Accordingly, this issue is without merit.
II. The Albright Factors
¶ 18. In matters of child custody, the polestar consideration is the best interest of the child. Albright v. Albright, *967 437 So.2d 1003, 1005 (Miss.1983). In determining the best interest of the child, the following factors should be considered:
Age[,] ... health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

Id.

¶ 19. Heidi contends the presumption set forth in Mississippi Code Annotated section 93-5-24(9) was successfully raised by the evidence of domestic violence and that Jeremy failed to rebut the presumption. Therefore, Heidi asserts that Jeremy is precluded from being awarded full physical custody of Isaiah based on an Albright analysis. As previously stated, the record contains evidence of numerous savage encounters between both parties. The chancellor found that both parties had exemplified violent behavior and had pending criminal charges against them for this behavior. Jeremy was controlling and brutal, while Heidi had a documented pattern of violent and destructive behavior. Although Heidi points out many forceful confrontations with Jeremy, the only evidence of any serious injury inflicted on either party was manifested by Heidi when she stabbed Jeremy. We find that the chancellor did not abuse his discretion in refusing to apply the statutory presumption against Jeremy or Heidi. See Rolison v. Rolison, 105 So.3d 1136, 1137-39 (¶¶ 5-11) (Miss.Ct.App.2012).
¶ 20. Further, the chancellor went through an extensive analysis of each Al-bright factor in his written opinion. The chancellor made clear findings of fact and conclusions of law for each Albright factor after considering the witnesses’ testimony and the evidence, including the GAL’s recommendation. Six of the Albright factors favored Jeremy, and six factors were neutral. After a thorough review of the record and the chancellor’s written findings, we find that the chancellor did not abuse his discretion in his analysis of the Al-bright factors. This issue is also without merit. Thus, we affirm the chancellor’s judgment.
¶ 21. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).