## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00327-COA

**DONNA (HARTSOE) PRICE**                                           **APPELLANT**

**v.**

**TIMOTHY MICHAEL SNOWDEN**                                         **APPELLEE**

DATE OF JUDGMENT:              02/12/2014
TRIAL JUDGE:                  HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:    DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:      BENJAMIN LOUIS TAYLOR
                              SHELLEE DAWN WATSON
ATTORNEY FOR APPELLEE:        JAMES W. AMOS
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:      DENIED MOTION FOR CONTEMPT AND
                              ARREARAGES
DISPOSITION:                  REVERSED AND REMANDED: 06/30/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1.   Donna Hartsoe Price appeals the DeSoto County Chancery Court's judgment denying her claim that Timothy Michael Snowden was in contempt for his failure to pay child support. The contempt allegation primarily deals with the calculation of Snowden's child-support obligation based on his annual income that was agreed to in the chancellor's prior order. Finding error, we reverse and remand for further proceedings consistent with this opinion.

### FACTS

¶2.   Donna and Tim are the parents of Landen Hartsoe. Landen was born on July 19,

1994. Donna and Tim were never married. At the time of the hearing in this matter, Landen was nineteen years old.

¶3. On January 16, 2014, Chancellor Melvin McClure Jr. entered an "Agreed Order on Paternity, Child Custody, Child Support and Visitation." In the order, Tim acknowledged that he was Landen's father. The order awarded Donna sole physical custody of Landen, gave Tim visitation rights, and required Tim and Donna to share joint legal custody on a limited basis.[1] The order also contained two provisions that required Tim to pay child support and college-education expenses:

> [Tim] will pay [Donna] child support based upon [f]ourteen [p]er[c]ent (14%) of his adjusted gross income pursuant to statutory guidelines. Said child support amount shall be adjusted appropriately on March 1st of each year beginning 3/1/04 based upon the income of [Tim] as documented for the preceding year. [Tim] will provide necessary documentation on or before February 15th of each year consecutively beginning 2/15/04. Child support to be paid by [Tim] to [Donna] shall continue at $620.00 per month until March 1, 2004[,] and, thereafter, until appropriately adjusted as per the terms of this agreement.
>
> . . . .
>
> Parties agree to equally share tuition costs and book expenses for college for said minor child based upon those expenses charged at the University of

---

[1] The order read:

> [T]he parties [shall] share joint legal custody on a limited basis[,] i.e.[,] only as to issues related to decisions concerning [medical] life support[,] and the parties shall immediately notify the other in the event of hospitalization and provide reasonable updates on condition and care of the minor child. The parties agree that the [Donna] shall provide [Tim] a copy of each report card and allow [Tim] access to discuss the educational needs and participate in the educational needs with the minor's teachers.

Mississippi at the time that said minor child begins college. Said minor child may attend any college of his choice subject to this financial parameter. Child must be a full-time student and maintain a "C" average. All expenses to be documented to each party and each of them shall pay their equal share within [fourteen] days of notification. Child support shall be paid until the said minor child reaches the age of [twenty-one] years; thereafter, assuming that said child is a full-time student, parties shall equally share all college expenses for tuition, books, room [and] board[,] and other reasonable and necessary expenses up until the child reaches the age of [t]wenty-three . . . years.

¶4. In 2009, the chancellor granted a modification to visitation to allow for a more conducive schedule for Landen to play football. The order incorporated the provisions of the 2004 order verbatim regarding the calculation and length of child support.

¶5. On March 25, 2013, Tim filed a petition to modify child support. Tim alleged that Landen was eighteen years old and would soon be emancipated. On May 1, 2013, Tim stopped paying child support. Tim also refused to pay one-half of Landen's spring college tuition because Landen was not a full-time student. Donna responded with a petition for contempt regarding the unpaid child support and college expenses.

¶6. In discovery, Donna learned that Tim had been calculating his child-support obligation by his taxable income since 2004 and not "pursuant to statutory guidelines." Donna learned that Tim received a housing allowance and "sea pay" from his employer, the United States Navy. Neither his housing allowance nor his "sea pay" was taxable to Tim; thus, these amounts were not reported on his federal-income-tax form. Tim acknowledged that his "sea pay" should have been included in his child-support calculation, and he agreed to pay Donna fourteen percent of that amount. Donna argued that she was also entitled to receive fourteen percent of Tim's housing allowance during the years since 2004.

3

¶7. A hearing was held on July 26, 2013. Then, on October 7, 2013, Chancellor Percy L. Lynchard Jr. issued an opinion of the court. The opinion was reduced to an order, which was entered on February 12, 2014. In the order, the chancellor ruled:

> [Tim] received total "sea pay" of $7,039.00 for the months between May [] 2010 through June [] 2012. That [Tim] shall pay unto [Donna] fourteen percent (14%) of that amount, or $985.46;
>
> That [Tim] pay unto [Donna] child support for the months of May [] 2013 through October [] 2013 (six months) in a lump sum and continue to pay child support each and every month thereafter as ordered by the Court in the Order dated June 24, 2009. That said child support shall be in the amount of fourteen percent (14%) of all income of [Tim] including "sea pay" but excluding housing allowance receipts. That the calculated amount for the months of March [] 2013 through February [] 2014 was $692.42 per month. That no "sea pay" was collected during the May [] 2013 through October [] 2013 time period. That [Tim] shall pay . . . [Donna] for the six months of May [] 2013 through October [] 2013, or $4,154.52, immediately without unreasonable delay.
>
> That expenses for books [were] not incurred and tuition expenses were $1,050.00 for the Spring 2013 semester. That [Tim] shall pay unto [Donna] one-half of the tuition costs, or $525.00.

¶8. It is from this order that Donna now appeals.

## ANALYSIS

¶9. In domestic-relations cases, this Court will not disturb a chancellor's judgment when it is supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Rolison v. Rolison*, 105 So. 3d 1136, 1137 (¶4) (Miss. Ct. App. 2012). "If the chancellor's findings are supported by substantial evidence, then we will affirm." *Id.* (citation omitted). Questions of law, however, are reviewed de novo. *Price v. Price*, 22 So. 3d 331, 332 (¶8)

(Miss. Ct. App. 2009).

> I. Whether the chancellor erred by excluding Tim's basic-housing allowance as income in the child-support calculation.

¶10. Donna claims that Tim has underpaid his child-support obligation. The child-support order provides that "[Tim] will pay [Donna] child support based upon [f]ourteen [p]er[c]ent (14%) of his adjusted gross income pursuant to statutory guidelines." The order also provides that this amount is to be adjusted annually.

¶11. We begin with the child-support guidelines. Mississippi Code Annotated section 43-19-101(3)(a) (Supp. 2014) provides that "gross income" includes the following:

> *[G]ross income from all potential sources that may reasonably be expected to be available to the absent parent including*, but not limited to, the following: wages and salary income; income from self-employment; income from commissions; income from investments, including dividends, interest income and income on any trust account or property; [the] absent parent's portion of any joint income of both parents; workers' compensation, disability, unemployment, annuity and retirement benefits, including an Individual Retirement Account (IRA); any other payments made by any person, private entity, federal or state government or any unit of local government; alimony; any income earned from an interest in or from inherited property; *any other form of earned income*; and gross income shall exclude any monetary benefits derived from a second household, such as income of the absent parent's current spouse[.]

(Emphasis added).

¶12. When the original order was entered in 2004, Tim was an officer of the United States Navy. Tim received nontaxable federal payments for basic allowable housing (BAH) and basic allowable subsistence (BAS). Tim testified that his attorneys told him to rely on his mother-in-law, acting as his tax accountant, to calculate his monthly child-support obligation. His mother-in-law claimed she read the statute and "double-checked" with social services

to determine that child-support calculations were to be based solely on taxable income.

¶13.    Here, Donna and Tim agreed to an escalation clause to determine the appropriate amount of child support.  Previously, this Court noted that "[t]he parties may in fact agree of their own volition to do more than the law requires of them.  Where such a valid agreement is made, it may be enforced just as any other contract." *Stigler v. Stigler*, 48 So. 3d 547, 551 (¶9) (Miss. Ct. App. 2009) (internal citations omitted).  Here, Donna and Tim both agreed to the escalation clause as written.  Tim has not contested the validity or enforceability of the clause in this action.  Thus, it is a valid clause in their agreement.

¶14.    In *Bustin v. Bustin*, 806 So. 2d 1136, 1139 (¶8) (Miss. Ct. App. 2001), this Court considered the language "any other form of earned income" in section 43-19-101(3)(a), containing the provisions commonly referred to as the child-support guidelines.  Sue and William Bustin were divorced, and William was ordered to pay child support for two children at the statutory amount of twenty percent of his gross income.  *Id.* at 1137 (¶2). After the divorce, William was promoted to be the pastor at his church, and was given a housing allowance of $1,500 per month.  *Id.*  William brought a motion to modify his child-support obligation, for contempt, and for sanctions, while Sue responded with her own motion to modify.  *Id.* at (¶3).  The chancellor determined that William's housing allowance should be included in the calculation of his gross income.  *Id.* at (¶1).  This Court held:

> It appears from a plain reading of the text that the statute addresses the issue of income and what is included when tabulating child support.  The phrase "any other form of earned income" would seem to include items in a person's salary package.  William is given that housing allowance as part of his salary from the church.  If William went to a bank tomorrow and applied for a loan, he would most definitely list his housing allowance as income in order to show

6

that he would be able to repay his loan. Salary from one's employer is one of the key elements when estimating everything from income taxes to interest rates on a bank loan.

Moreover, computing one's income for taxation is different than computing one's income for child[-]support purposes. Our state must protect the best interests of the child. One of the ways Mississippi accomplishes that goal is child[-]support enforcement through statutes. Our statutes delineate what is to be considered as gross income for the purposes of computing child support. This issue is also without merit.

*Id.* at 1140 (¶¶10-11).

¶15. Quite frankly, this interpretation of section 43-19-101(3)(a) leads to a logical result. Uniform Chancery Court Rule 8.05(a) requires the parties to file a "detailed written statement of actual income and expenses." The Rule 8.05 form provides for the detail of income and expense. Income is to be disclosed in section 2. Line 13, "Present Monthly Gross Income," requires the disclosure of "[m]onthly reimbursed expenses and in-kind payments to the extent that they reduce personal living expenses such as cars, travel, gas, phone, etc." This amount is included in the calculation for the chancellor to determine gross income. Similarly, the Rule 8.05 form provides for the expense to be deducted. Section 3, "Monthly Expenses," requires a party to disclose "[m]onthly mortgage or rent payments."

¶16. We find that Tim's BAH and BAS payments are a "form of earned income" under section 43-19-101(3)(a). The United States Navy paid Tim additional income for his housing and subsistence, and these payments were earned by Tim and assisted him with the payment of his monthly expenses.

¶17. The advice Tim received from his accountant/mother-in-law was incorrect. The chancellor's order clearly stated that Tim was to pay Donna fourteen percent of his gross

7

income as determined by the statutory guidelines. Tim's BAH and BAS should have been included in the child-support calculations.

¶18. Once the order is set, "[n]o party obligated by a judicial decree to provide support for minor children may resort to self[-]help and modify his or her obligation with impunity. The interest of children weighs in the judicial mind far heavier than those of either parent." *Cumberland v. Cumberland*, 564 So. 2d 839, 847 (Miss. 1990). Further, *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1992), states: "[C]hild support payments vest in the child as they accrue. Once they have become vested, just as they cannot be contracted away by the parents, they cannot be modified or forgiven by the courts."

¶19. Accordingly, we find that the chancellor's decision to deny Donna's request for payment of the arrearage was manifestly wrong and clearly erroneous. Therefore, we reverse the chancellor's judgment and remand this issue for the chancellor to calculate the amount of additional child support owed by Tim from 2004. Having determined the error, several of the other issues asserted by Donna are now moot.

      II.    *Whether Tim was in contempt.*

¶20. Donna has also raised several issues in which she claims that the chancellor erred when he did not find Tim in contempt and award her attorneys' fees.

¶21. "Whether a party is in contempt is left to the chancellor's substantial discretion." *McIntosh v. Dep't of Human Servs.*, 886 So. 2d 721, 725 (¶11) (Miss. 2004). "Failure to comply with a court order is prima facie evidence of contempt." *Evans v. Evans*, 75 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2011) (citing *McIntosh*, 886 So. 2d at 724 (¶11)). "To

8

rebut a prima facie case of contempt, a defendant must show an 'inability to pay, that the default was not willful, that the provision violated was ambiguous, or that performance was impossible.'" *Id.* (quoting Deborah H. Bell, *Bell on Mississippi Family Law* § 11.05[1][a] (1st ed. 2005)).

¶22. Tim testified that he was acting on the advice of counsel when he used his mother-in-law/tax accountant to calculate his child-support payments. Acting on the advice of counsel does not excuse a person from following an order, but it may be considered in determining whether there was willful contempt. *Cossitt v. Cossitt*, 975 So. 2d 274, 279 (¶23) (Miss. 2008). "A contempt citation is proper only when the contemner has wilfully and deliberately ignored the order of the court." *Cooper v. Keyes*, 510 So. 2d 518, 519 (Miss. 1987) (citing *Millis v. State*, 106 Miss. 131, 63 So. 344 (1913)).

¶23. As for the inclusion of his "sea pay" in the child-support calculation, Tim decided to exclude these payments from his child support. "Sea pay" is nonrecurring, taxable pay that is received while on sea duty. Tim advised his mother-in-law/tax accountant to exclude it from the calculation. From what he had read, he thought that because it was nonrecurring pay, it did not need to be included.

¶24. In *Milam v. Milam*, 509 So. 2d 864, 866 (Miss. 1987), the Mississippi Supreme Court held that it "will not reverse the [c]hancellor upon a finding of fact short of manifest error, and none is present here. Contempt is to be determined upon the facts of an individual case and is a matter for the trier of fact." As to the "sea pay," the chancellor apparently found Snowden to be sincere when he thought it was not to be included. Although we find no basis

9

for its exclusion from the calculation, we cannot say the chancellor erred in the decision not to hold Tim in contempt for failure to pay fourteen percent of his "sea pay."

¶25.   As to the failure to include the BHA and BAS in the child-support calculation, as discussed above, we remand this issue to the chancellor to consider along with the calculation of the child-support arrearage.  As discussed above, Donna has provided prima facie evidence of contempt for Tim's failure to follow the chancellor's order.  On remand, the chancellor may determine whether this failure was willful and consider whether a contempt finding is proper.

¶26.   As to Tim's decision to discontinue child-support payments believing Landen was emancipated, the chancellor did not find Tim in contempt, although the chancellor required Tim to pay Donna the outstanding child-support payments.  Tim unilaterally decided to stop making his child-support payments because he thought that Landen was emancipated and was not then a full-time student.  This decision was directly contrary to the child-support order, where Tim agreed:

> Child support shall be paid until the said minor child reaches the age of [twenty-one] years; thereafter, assuming that [the] child is a full-time student, [the] parties shall equally share all college expenses for tuition, books, room [and] board[,] and other reasonable and necessary expenses up until the child reaches the age of [t]wenty-three (23) years.

¶27.   The chancellor was manifestly wrong when he found Tim was not in contempt and in willful violation of the order.  We note that although chancellors are awarded great discretion, we cannot find any evidence that would support the decision to not hold Tim in contempt for this action.  As a result, on remand, we instruct the chancellor to consider an

award of attorneys' fees for the time, effort, and expenses Donna incurred in prosecuting this issue.

¶28.    **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.  JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**