GRIFFIS, P.J.,
for the Court:
¶ 1. Dwayne Norris appeals the Jones County Chancery Court’s decision to award a $5,000 judgment to Jacqueline Norris. Once again, an appellant in a domestic-relations case compares his case to that famous Jerry Reed hit song “She Got the Goldmine (I Got the Shaft).” We find error in the chancellor’s $5,000 award and remand the case for further proceedings.
¶ 2. Dwayne and Jacqueline were married. in October 2008. They separated in May 2012.- On June 20, 2012, Jacqueline filed her complaint for divorce on' the ground of habitual cruel and inhuman treatment.
¶ 3. Dwayne was served with the summons and complaint. Dwayne filed two pro se responses on July 17, 2012, and again on July 24, 2012, which the chancery clerk filed.
¶4. On January 13, 2014, Jacqueline filed her notice of service of discovery to which Dwayne did not respond.
¶ 5. Jacqueline filed her motion to set trial on March 11, 2014, and a notice of hearing set for April 9, 2014.- On April 9, 2014, the chancellor entered an order that set the trial for June 5, 2014. The chancery clerk filed a certificate of mailing that *924 indicated Dwayne was sent a copy of the order setting trial on April 9, 2014.
¶6. A trial was held on June 5, 2014. Dwayne did not appear.[1] The trial was held in Dwayne’s absence. Jacqueline and Quinesha McCurdy, Jacqueline’s stepsister, both testified on Jacqueline’s behalf.
¶7. On June 12, 2014, the chancellor entered the final judgment that granted Jacqueline a divorce due to habitual cruel and inhuman treatment, changed her name, and allowed her to retain all property in her possession. The chancellor further awarded Jacqueline “$5,000 ... as equitable distribution of the parties’ debt.” It is from this judgment that Dwayne appeals.
STANDARD OF REVIEW
¶ 8. “[An appellate court] will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010) (quoting Duncan v. Duncan, 774 So.2d 418, 419 (¶ 4) (Miss.2000)). “If the chancellor’s findings are supported by substantial, evidence, then we will affirm.” Rolison v. Rolison, 105 So.3d 1136, 1137 (¶ 4) (Miss.Ct.App.2012) (citation omitted). Questions of law, however, are reviewed de novo. Price v. Price, 22 So.3d 331, 332 (¶ 8) (Miss.Ct.App.2009) (citation omitted).
ANALYSIS
¶ 9. In this appeal, Dwayne asserts three issues:
I.Whether the [chancellor] erred in giving [the] wife a judgment for the amount of [the] husband’s retirement fund without requiring proof that the fund still exists.
II. Whether the [chancellor] erred in giving [the] wife a judgment for the amount of [the] husband’s indebtedness without requiring proof that there is still an outstanding balance.
III. Whether the [chancellor] erred in awarding what amounted to lump[-]sum alimony without [ ] careful consideration of the factors required to be considered by prior decisions of this [C]ourt.
¶ 10. We will not .address these issues as Dwayne requests. We conclude that the case may be resolved by looking at the evidence that supports the chancellor’s award to Jacqueline of “$5,000 ... as equitable distribution of the parties’ debt.”
¶ 11. At trial, Jacqueline requested reimbursements for car-title-loan debts, IRS debts, replacement of a damaged door, and expenses associated with moving to a smaller house. Jacqueline testified Dwayne caused her to incur all of these expenses. Jacqueline testified she had to downsize her home because she could not afford it, even though she bought it herself prior to the marriage. Jacqueline retained all of the proceeds of the sale so she could buy a new home. Dwayne did not own or claim any portion of the home. Further, Jacqueline testified:
Q. Now, did you incur debts for'the marriage?
A. Yes, sir.
Q. Okay, what kind of debts?
A. I had a house. I had to get rid of it ... to ... help pay for the house that I’m currently owning now. *925 And the light bill, you know. [Dwayne]- had stopped light bill payments. He wouldn’t help me.
Q. He wouldn’t do anything?
A. No.
Q. Okay. ■
A. And I got documentation[ ].
Q. Okay. How much are you asking the Court to award of bills? What figure are you asking the Court to award you of bills that he should have paid.
A. I’ll say $3,000.
Q. $3,000. Okay, And you had to sell a house? ¡
A.- Yes.
Then, at the conclusion of the trial, the following exchange took place between the chancellor and Jacqueline’s counsel:
THE COURT: What’s the total dollar judgment you are asking for ... ?
[COUNSEL]:' Your Honor, we’re asking for [a] $5,000 judgment against him. She has the property. And-she’s just asking for $5,000 to repay the expenses that she’s incurred for the household, utilities, food[,] and so forth ... [t]hat he refused to help pay. Because numerous times she’d ask for money for the house, for the utilities and — here’s $30. Here’s $20.
¶ 12. Jacqueline did not introduce any documentary evidence to support her claim. Also, the record before us does not indicate that Jacqueline filed a financial statement, as required by Rule.8.05 of the Uniform Chancery Court Rules. Had she filed a Rule 8.05 statement, there may have been evidence sufficient to support the chancellor’s finding.- However, we simply cannot find the evidence that wouid support the chancellor’s award of “$5,000 ... as equitable distribution of the parties’ debt” in the record. Indeed, there is very little evidence of the marital assets and debt. Instead, Jacqueline estimated that Dwayne should have contributed $3,000 for expenses. It is not clear why the chancellor awarded Jacqueline $5,000.
¶ 13. Because we conclude that the chancellor’s findings are not supported by substantial evidence, we must also find that the chancellor’s award of $5,000 to Jacqueline was manifestly wrong. For these reasons, we reverse the chancellor’s judgment awarding Jacqueline $5,000 and remand this case for further proceedings consistent with this opinion.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, MAXWELL, FAIR; JAMES AND WILSON, JJ„ CONCUR.' CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Dwayne does not assert he lacked notice, but states he missed the trial because he was confused about the date of the trial.