# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00642-COA

ANDREEKOUS L. JEFFERSON                                             APPELLANT

v.

CHARLISE J. JEFFERSON                                               APPELLEE

DATE OF JUDGMENT:              05/21/2020
TRIAL JUDGE:                   HON. RODNEY PURVIS FAVER
COURT FROM WHICH APPEALED:     OKTIBBEHA COUNTY CHANCERY
                               COURT
ATTORNEY FOR APPELLANT:        ROBERT J. DAMBRINO III
ATTORNEY FOR APPELLEE:         CHARLISE J. JEFFERSON (PRO SE)
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 09/21/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     A couple divorced, and the husband was ordered to pay monthly child support for their son. He appealed the chancellor's decision, specifically the inclusion of military benefits in the calculation of child support and the requirement that he pay for transportation costs related to visitation. Finding no error, we affirm the chancery court's ruling.

## FACTS AND PROCEDURAL HISTORY

¶2.     Andreekous and Charlise Jefferson have one child together. The family of three lived in Japan where Andreekous was stationed as a member of the United States Air Force. The pair separated, and Charlise returned to the United States with their son. Shortly thereafter, the couple filed a joint complaint for divorce.

¶3.     The parties attached to their complaint a property settlement agreement detailing the issues they had settled between themselves. The agreement provided that if one parent were to reside outside of the United States, the non-custodial parent would be entitled to visitation with the child for the entire summer. The couple asked the court to resolve the remaining issues of child support and "[t]he transportation cost[s] and other needs of the minor child for the noncustodial parent's visitation (including but not limited to travel expenses such as plane tickets, car rentals, and the like)."

¶4.     The court approved the agreement and granted a divorce on the ground of irreconcilable differences. In determining the amount of child support, the court reviewed Andreekous' financial disclosure forms. In addition to his base pay, Andreekous also received nontaxable federal payments for basic allowable subsistence, basic allowable housing, cost of living allowance, and clothing entitlements.

¶5.     After adding these sums, the court subtracted all mandatory deductions and arrived at an adjusted gross income of $6,396.32 per month for Andreekous. The court then ordered him to pay child support in the amount of 14% of his adjusted gross income and to "be responsible for all costs of transportation for the minor child for visitation purposes."

¶6.     Andreekous filed a motion to reconsider, and the court held a hearing on the matter of child support. At the hearing, Andreekous testified that he earned $3,500 a month. He testified he believed his earnings from the Air Force would be reduced after getting a divorce since his income was calculated in part upon his number of dependents. He further asserted

the support obligation was excessive, as he would soon be discharged from service. However, he testified that he intended to remain in Japan and had already secured a job but was unable to predict his new gross income. Counsel for both parties suggested delaying the matter until Andreekous began post-military employment, but the court declined, stating that Andreekous could later seek modification if necessary.

¶7. The issue of transportation costs was raised at the hearing. When asked whether he was willing to pay for the child's transportation, Andreekous said, "If [Charlise] can help with it, I mean, that would be awesome . . . ." Counsel later asked Andreekous to confirm whether he was able to provide the cost of transportation. He answered, "Yes." On the other hand, Charlise testified that she was unable to pay for the visitation expenses. She recalled that she helped Andreekous the first time he came to get their son but that she spent around "$950 on airfare, and it broke [her]."

¶8. Following the hearing, the court again ordered Andreekous to pay 14% of his adjusted gross income in child support, which was $895.48 per month. In accordance with this calculation, the court also ordered monthly back child support, credit for previous payments, and retroactive upward modification of monthly child support. The chancellor specifically noted in his order that Andreekous' adjusted gross income included his basic allowable subsistence, basic allowable housing, cost-of-living allowance, and clothing entitlements.

¶9. The chancellor again discussed transportation costs, stating that Andreekous would be responsible for transportation costs if the parties lived more than 150 miles apart within

3

the continental United States, and if one party lived outside the United States, that party would be responsible for transportation costs.

¶10. Andreekous now appeals the chancellor's decision regarding child support and transportation costs.

## STANDARD OF REVIEW

¶11. "The award of child support is a matter within the discretion of the chancery court, and it will not be reversed unless the chancery court was manifestly wrong in its finding of fact or manifestly abused its discretion." *Best v. Oliver*, 296 So. 3d 140, 142 (¶7) (Miss. Ct. App. 2020) (cleaned up). "The determination of the amount of support needed must be made by a chancellor who hears all the facts, views the witnesses, and is informed at trial of the circumstances of the parties and particularly the circumstances of the child." *Id*. "The process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id*.

## ANALYSIS

¶12. Andreekous alleges the chancery court erred in determining the amount of child support due. He claims the chancery court made an improper calculation of his adjusted gross income by including Air Force benefits and failing to consider the cost of travel expenses imputed to him.[1]

---

[1] Charlise did not respond to the brief filed by her ex-husband. Typically, an appellee's failure to file a brief is taken as a confession of error. *Edwards v. Edwards-Barker*, 875 So. 2d 1126, 1128 (¶5) (Miss. Ct. App. 2004). "In matters of child

## I.     Andreekous' military entitlements were a form of earned income.

¶13.     Andreekous alleges the chancellor miscalculated his adjusted gross income for purposes of determining child support. Primarily, he argues the chancery court erred by imputing his military entitlements as income in the child-support calculation.

¶14.     When calculating adjusted gross income for child support purposes, a court considers "all potential sources that may reasonably be expected to be available to the absent parent[.]" Miss. Code Ann. § 43-19-101(3)(a) (Rev. 2015). Gross income includes non-salary employment benefits "that replace what otherwise would be personal expenditures[.]" *Pittman v. Pittman*, 791 So. 2d 857, 868 (¶41) (Miss. Ct. App. 2001), *overruled on other grounds by Collins v. Collins*, 112 So. 3d 428, 432 (¶11) (Miss. 2013). For example, we have held that a parent's housing allowance provided by his employer was correctly included in his adjusted gross income for purposes of calculating monthly child support. *Bustin v. Bustin*, 806 So. 2d 1136, 1140 (¶¶7, 10) (Miss. Ct. App. 2001).

¶15.     This exact issue was addressed in *Price v. Snowden*, 187 So. 3d 159 (Miss. Ct. App. 2015). There, this Court held that a father serving in the United States Navy was obligated to impute his basic allowable subsistence (BAS) as well as his basic allowable housing (BAH) entitlements to his gross income. *Id*. at 163 (¶12). "The United States Navy paid [the father] additional income for his housing and subsistence, and these payments were earned

---

custody and support, however, in the absence of an appellee's brief, our practice is to make a special effort to review the record for support for affirmance." *Id*. (quoting *Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992)).

by [the father] and assisted him with the payment of his monthly expenses." *Id*. at 164 (¶16). Accordingly, "BAH and BAS payments are a 'form of earned income' under section 43-19-101(3)(a)." *Id.*

¶16.    The chancellor cited to *Price* and applied it in computing adjusted gross income. As we did in *Price*, here too we find that Andreekous' entitlements are a form of earned income under section 43-19-101(3)(a). For that reason, we affirm chancery court's inclusion of the benefits in calculating Andreekous' adjusted gross income.[2]

## II.    Andreekous is responsible for the cost of transportation.

¶17.    Andreekous next argues that the chancellor erred by failing to reduce his support obligations to account for his absorption of all visitation-related travel expenses to and from Japan.

¶18.    "The determination of transportation and costs associated with child visitation is within the chancellor's discretion." *Michael v. Smith*, 237 So. 3d 183, 190 (¶31) (Miss. Ct. App. 2018). "There is no authority in Mississippi to the effect that the non-custodial parent

---

[2] In his statement of the issues, Andreekous protests that the trial court "erred in calculating child support on the future income" he might earn, which was "wholly dependent on [his] status as a member of the United States Air Force." He never returns to this issue in the body of his brief, and it is not supported by citation to authority. "Failure to support allegations of error with argument or authority results in waiver." *Griner v. Griner*, 282 So. 3d 1243, 1251 (¶31) (Miss. Ct. App. 2019); *see also* M.R.A.P. 28(a)(7). Even if this argument were not procedurally barred, we have held a "chancellor was not required to predict and calculate a future adjusted gross income based only on [a parent's] estimate of how much his annual income would 'probably' decrease five months in the future." *Harden v. Scarborough*, 240 So. 3d 1246, 1256 (¶28) (Miss. Ct. App. 2018).

is entitled to the assistance of the former spouse in the logistical aspects of exercising visitation rights." *Branch v. Branch*, 174 So. 3d 932, 940 (¶24) (Miss. Ct. App. 2015).

¶19. Andreekous notes that "[t]his issue has been addressed in other states" and presents us with a case from Florida. However, this issue has been directly addressed in longstanding caselaw from Mississippi. We have held that it is a "question of fact and not an issue of law" regarding the impairment of a visitation schedule. *Id*. at (¶25) (quoting *Hulse v. Hulse*, 724 So. 2d 918, 919 (¶6) (Miss. Ct. App. 1998)). For in those situations "where it could be demonstrated that the ability of the non-custodial parent to enjoy a suitable visitation schedule was substantially impaired because of difficulties in transportation that could only be resolved by the reasonable participation of the custodial parent," it could be manifest error for a trial court to "refus[e] to order some measure of cooperation from the custodial parent." *Id.*

¶20. Yet this is not that type of situation. There is no evidence that Andreekous' obligation to pay transportation costs hindered his ability to continue the visitation arrangement. Instead, he testified that while it "would be awesome" if Charlise could help, he was able pay the transportation costs. In contrast, Charlise testified that when she shouldered the burden of sending their to son to Japan, the high cost of airfare "broke" her.

¶21. Given that fact, coupled with the reality that Andreekous has chosen to reside in Japan in his post-military career, we cannot find that the trial court committed manifest error in its finding that he should continue to pay for the child's transportation to Japan.

7

## CONCLUSION

¶22.    For the above stated reasons, the chancery court's support order is **AFFIRMED**.

        **BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.  CARLTON, P.J., NOT PARTICIPATING.**