DICKINSON, PRESIDING JUSTICE,
CONCURRING IN PART AND DISSENTING IN PART:
¶51. Before his first trip to this Court, the chancellor held Clayton in contempt and ordered him to pay attorney fees. Clayton appealed and we reversed, finding “the chancellor’s contempt judgment and award of attorney’s fees against Clayton was manifestly in error.”[15] Our reason was that a portion of the contempt judgment *817 rested on Clayton’s failure to comply -with ambiguous provisions in the chancellor’s orders, and our law precludes a finding of contempt-based noncompliance with an ambiguous order.[16] So, because any portion of the contempt judgment and attorney fees associated with noncompliance with the ambiguous provisions was improper, the chancellor, on remand, was supposed to have separated out and excluded from the award of attorney fees those associated with the ambiguity.
¶52. Instead, on remand, the chancellor once again held Clayton in contempt for all nonpayment. This was improper. We made it clear that no contempt judgment ever could rest on Clayton’s failure to comply with the ambiguous provisions. The chancellor should have determined how much of Clayton’s nonpayment resulted from the ambiguity, and removed that amount from the contempt judgment. Because he failed to do so, I would reverse and remand on that issue, and I must concur in part and dissent in part.
¶53. In a May 4, 2010, temporary order, “the chancellor ordered Clayton to ‘continue to pay the necessities of the marriage, including but not limited to utilities, mortgages, cellular telephones, automobile notes, automobile insurance, health insurance, gas and groceries of the wife’ ” and “ ‘to pay Trisha $750 per month for ‘other expenditures.’ ”[17]
¶54. On July 8, 2011, the chancellor ordered “the chancery clerk to release $2,250 per month from the court registry for the next four months to Trisha to pay for her gas and groceries; the marital home’s water, sewer and cable bills; and the children’s dance classes”[18] He also ordered that “‘[a]ll marital debts, including the marital home electricity bill, previously paid by [Clayton] per order of this Court shall continue to be his responsibility until further order of this Court,’” but that “ ‘[t]his does away with the language of the prior Temporary Order wherein [Clayton] was ordered to pay the other marital necessities of the wife.’ ”[19]
¶55. In the April 23, 2013, judgment of divorce, the chancellor held Clayton in contempt for failure to pay sums due under the temporary orders. He awarded Trisha a contempt judgment of $16,019 plus $2,500 in attorney’s fees.[20] Clayton appealed the contempt judgment and argued “that the chancellor’s May 4, 2010, temporary order and July 8, 2011, temporary order create ambiguity regarding his support obligation, which the chancellor never resolved.”[21]
¶56. This Court found “that the chancellor’s contempt judgment and'award of attorney’s fees against Clayton was manifestly in error” because “‘no charge of contempt will be sustained where the final decree is insufficient to advise the party affected in clear and unequivocal language of that which he has been ordered to do.’ ”[22] According to this Court, “the July 8, 2011, temporary order created several obvious ambiguities regarding Clayton’s continuing support obligations” and because of those ambiguities “a genuine dispute existed as to whether Clayton was required to make those payments after *818 July 2011 ”[23]
¶57.' In other words, we found that Clay-' ton could not be held' in contempt because the orders did not define his duty .to pay with" “clear and unequivocal language.” The reasoning underlying this holding is clear: “[t]o be found in contempt, a party has to willfully and deliberately violate a court order.”[24] And “[a] party does not willfully and deliberately violate an order if the order is unclear.”[25]
¶58. Ordinarily, this would end the inquiry; we would reverse and render the judgment of contempt because no contempt judgment could rest on an order that was ambiguous when allegedly violated. But in the first appeal of this case, Clayton had “admitted that he had failed to reimburse Trisha for some of her valid monthly expenses.”[26] So we found, “a finding of contempt may be in order.”[27] While Clayton could not be held in contempt for any nonpayment that occurred because of the ambiguity, he could be held in contempt for any failure to comply with any unambiguous obligations.
¶59. I believe we remanded the contempt issue to the chancellor for that purpose:- to determine what portion of the contempt resulted from the ambiguity, and-to hold Clayton , in contempt only for any nonpayment that did not result' from the ambiguity. Unfortunately, our directions for the chancellor on remand were; less than clear. We stated “the chancery court must resolve the ambiguity in its previous orders before it can determine the actual amount of Clayton’s deficiency. Accordingly, we reverse the chancery court’s contempt judgment and award of attorney’s fees and remand this case for further proceedings.”[28]
¶60. On remand, the chancellor understood this .statement to mean he should, explain what he actually meant in the July 8, 2011, order, then hold Clayton in contempt for all nonpayment, disregarding the fact that we already had held that some of the order was ambiguous when Clayton failed to make payment. This does not comport with our law.
¶61. As explained above, ambiguity in an order absolves a litigant of contempt for failure to follow the order’s ambiguous provisions because contempt must be willful and deliberate, and a litigant cannot willfully and deliberately disregard an unclear duty. Obviously, this cannot be remedied after the fact: the chancellor explaining what he meant after the alleged contempt occurred cannot transform the litigant’s failure to comply into a willful and deliberate' act. If the order was unclear when the alleged contempt occurred, no contempt ever can rest on the unclear duty. .
¶62, So I once again would reverse the chancellor’s judgment of contempt. I would remand this case to the chancellor to do what I believe our first opinion tried .to order: determine which portion of Clayton’s alleged contempt resulted from the ambiguous provision of the order, which portion resulted from the clear portions of *819 the order, and to enter a judgment for the latter only.
WALLER, C.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.

. Gutierrez v. Gutierrez, 153 So.3d 703, 713 (Miss. 2014).

. Id. at 713-14 (quoting Switzer v. Switzer, 460 So.2d 843, 846 (Miss. 1984)).

. Gutietrez, 153 So.3d at 711.

. Id. at 712.

. Id.

. Id.

. Id. at 713.

. Id. (quoting Switzer, 460 So.2d at 846).

. Gutierrez, 153 So.3d at 711.

. McKnight v. Jenkins, 155 So.3d 730, 732 (Miss. 2013) (citing R.K. v. J.K., 946 So.2d 764, 778 (Miss. 2007)).

. McKnight, 155 So.3d at 732 (citing Cossitt v. Cossitt, 975 So.2d 274, 279 (Miss. Ct. App. 2008)).

. Id. at 714.

. Id.

. Id.